(No. 2315. Oct. 27, 1919.)
(Rehearing Denied April 18, 1920.)

JACKSON v. DEMING ICE & ELECTRIC CO.

SYLLABUS BY THE COURT.

1. The submission of a false issue to the jury in an instruction, by assuming a state of facts not shown in evidence, is prejudicial error, and requires a reversal of the judgment.
P. 9

2. An exception to the giving of such an instruction, which fairly presents the objection to the trial court, requires the granting of a new trial. P. 10

3. Section 1, c. 42, Laws 1917, interpreted, and **held**, that no motion for a new trial is now required to preserve an exception for review in this court, and that the fact that a motion for a new trial is in fact made, but which fails to embrace the objection in question, does not prevent a review of the objection in this court.                                              P. 10

4. An assignment of error which states an objection to the giving of an instruction, and which refers to a specific page of the transcript for the reason for the objection, is sufficient, although the better practice would be to make the assignment complete upon its face.                                              P. 11

ROBERTS, J., dissenting.

Appeal from District Court, Luna County; R. R. Ryan, Judge.

Action by B. S. Jackson, administrator of Harry H. Archuleta, deceased, against the Deming Ice & Electric Company. Verdict and judgment for plaintiff, and defendant appeals. Reversed, and cause remanded, with instructions to grant a new trial.

R. F. HAMILTON and A. F. POLLARD, of Deming, for appellant.

KINGAN & CAMPBELL, of Tucson, Arizona, of counsel.

An instruction which assumes the existence of certain facts or of evidence tending to prove them, when, in fact, there is no such evidence, is erroneous, and should not be given.

38 Cyc. 1671; 11 Enc. P. & P. 130; Batten v. Newell, 30 Ga. 271; Mayor of Baltimore v. Poltney, 25 Md. 18; City of Crete v. Childs, 9 N. W. 55; Arnd v. Aylesworth, 111 N. W. 407; Railroad Co. v. Gladmon, 15 Wall. 401; Thayer v. D. & R. G. R. Co., 21 N. M. 330. Barce v. City of Shenandoah, 106 Ia. 426, 76 N. W. 747; Schlesinger & Mayer v. Schuenemann, 114 Ill. App. 459, Thompson on Trials (2nd Ed.) Sec. 2315.

It is error to submit to a jury an issue that is not warranted by either pleadings and evidence, and an

instruction, vicious in this regard, will be ground for
reversal if there be a tendency to mislead. It is the
better opinion that even if evidence be introduced out-
side of the issues made by the pleadings, that instruc-
tions based on such evidence are erroneous. The follow-
ing cases support the above propositions:

Herrin v. Cole, 25 Neb. 692; Dorsey v. McGee, 30 Neb.
657; Raysdon v. Twinble, 52 Mo. 35; Wilhelm v. Fimple,
31 Ia. 131; Waddingham v. Hewlett, 92 Mo. 528; Rapp
v. Kester, 125 Ind. 79; Iron Mountain Bank v. Murdoch,
62 Mo. 70; Biester v. Evans, 59 Ill. App. 181; Beau-
champ v. Higgins, 20 Mo. App. 514; Sargeant v. Laiden,
55 Cal. 204; Gibbs v. Wall, 10 Colo. 1053; Western
Home Ins. Co. v. Thorpe, 40 Kan. 255; Wilcox v. Chi-
cago, 24 Minn. 269; Dallas Rapid Transit Co. v. Camp-
bell, Tex. Civ. App., 26 S. W. 884; Glass v. Gelden, 80
Mo. 297; Capital Bank v. Armstrong, 62 Mo. 65; Gulf
of California Navigation Co. v. State Inv. Co., 70 Cal.
586; Roberts v. Richardson, 39 Ia. 290; Coos Bay R.
Co. v. Siglin, 26 Ore. 387; Matson v. Frazier, 48 Mo.
App. 302.

VAUGHT & WATSON, of Deming, for appellee.

Where matters are not included in motion for new
trial they are abandoned and cannot be raised on ap-
peal. This rule applies even under our statute where
party elects to file motion.

Henry v. Cartwright, 13 N. M. 384; Hagin v. Collins,
15 N. M. 621; Church v. Turknett, 17 N. M. 275-80;
Bank v. W. U. Tel. Co., 19 N. M. 211-27; James v.
Hood, 19 N. M. 234-40; State v. Pino, 21 N. M. 660-3;
C. 42 Laws 1917.

Assignments of error must be specific. 3 C. J. 81.

Exceptions to be instructions must be specific. 3 C. J.
927; State v. Gonzales, 19 N. M. 467; State v. Orfanakis,
22 N. M. 107.

OPINION OF THE COURT.

PARKER, C. J. The appellant on September 20, 1917, was a public service corporation engaged in supplying the inhabitants of Deming and the surrounding country with electric energy for lighting and power. On the date mentioned a part of its equipment consisted of a line of poles and wires running east and west on Birch street. This line consisted of two wires carrying a voltage of approximately 2,300 volts. Granite street intersected Birch street, and appellee resided in a house owned by a Mrs. Bishop which fronted on Granite street; the lot on which it stood extending 150 feet deep on Birch street. The lot was inclosed with a fence, having a front entrance, and also an entrance about 60 feet from the front on Birch street. The rear part of the lot was inclosed with a board fence about 5 feet high. In the northwest corner of the inclosure, at the rear of the lot, there was a small frame garage.

On the date mentioned the house was occupied by Harry H. Archuleta, his wife, and small child, and by one Kelly, and the garage was occupied by Mrs. Bishop, owner of the premises, and her three small children. About 10 o'clock at night on the 20th of September, 1917, the electric light pole at the corner of the alley, with the transformer, fell on the garage. In falling, the transformer was broken loose from the pole, and fell in front of the garage entrance, inside of the inclosure. Mrs. Bishop and her children were in bed in the garage, and upon the pole falling were very much alarmed. She opened the door of the garage and screamed, and Mr. and Mrs. Archuleta and Kelly came to the back door, being on a screened porch at the rear of the house. At this time the service wires extending from the pole to the house were down and clearly visible by reason of the electric light, which was burning at a pole situated at the southwest corner of Granite and Birch streets and distant from the Archuleta house some 30 feet or more. Mr. Kelly came to the assistance of Mrs. Bishop, and Mr. Archuleta went to a neighbor's house, distant approximately from Archuleta's back door 100 feet or more. The occupants of this house had been awakened

Jackson v. Deming, I. & E. Co., 26 N. M. 3.

by the crash of the falling pole and the outcries of Mrs. Bishop. Archuleta went to the telephone in this house— Mr. Kerr's—and telephoned to the office of appellant, stating that a pole had fallen down and fallen on a house, that he was afraid the house would be set afire and some one hurt, and that they had better shut off the current. After telephoning, Archuleta talked with Mr. Kerr a few moments, and then left Kerr's house. Upon reaching the sidewalk along Granite street he met a soldier, and he and the soldier proceeded north along the sidewalk to the front gate of Archuleta's house. Here Archuleta left the soldier and went into his yard, passed around the house and to the gate situated on the south line of Birch street, and close to the intersection of the high board fence and the lower or front fence. He started to go through the gate, but for some unknown reason turned about and came back to his own front gate, and there rejoined the soldier. He and the soldier then proceeded north along the remaining part of Archuleta's premises and to the corner of Birch street. Here they passed some little distance into the street, and then proceeded west down Birch street to a point beyond the aforesaid north gate of the Archuleta premises. Here they encountered the service wires running from the fallen pole or transformer across Birch street to the rear of the Nesh house, whereupon they turned about and came toward the Archuleta side gate, Archuleta in advance some 4 feet of the soldier. The soldier saw the wires which were down, but not on the ground, and called out to Archuleta and reached for him to stop his progress; but notwithstanding the cry Archuleta advanced the very short distance that existed between him and the wire, came in contact with the wire, and was immediately killed. The time that had expired from the falling of the pole up to the time of Archuleta's death was approximately 10 minutes. Immediately after Mr. Archuleta's death, Mr. Kerr telephoned the office of appellant and the power was shut off.

When Mr. Archuleta telephoned the office of appellant, he spoke to one Dial, who was employed as a stenographer by the appellant. Mr. Archuleta did not give his

name in telephoning and was not asked his name by Mr. Dial, and according to the testimony by Mr. Dial stated incorrectly the whereabouts of the fallen pole, giving the wrong block; he giving block 400, instead of block 600. Mr. Dial made no inquiry of Mr. Archuleta after being informed that the pole and wires were down, and that some one might be hurt. Immediately upon receipt of the message, Mr. Dial attempted to call Mr. Cummings, the superintendent of appellant. He could not get in communication with Mr. Cummings, however, by telephone, and got into an automobile and went to the Cummings house, and there found that Mr. Cummings had already gone to the scene of the accident. Mr. Shepherd was the manager of the appellant. He had left the office of the company apparently only a minute or two prior to the telephone message of Archuleta and had gone home. There was considerable evidence introduced upon the trial as to the rotten condition of the pole; but this phase of the case, in view of our conclusion, needs no consideration.

It was alleged in the complaint that it was the duty of the appellant to exercise reasonable care to see that its poles, lines, and wires did not, by reason of dilapidation, decay, or otherwise, become dangerous to persons traveling along or being in the public streets, and that it was the duty of the appellant, upon being warned and advised that any part of its system of poles and wires had fallen and were lying in such condition as to be dangerous to travelers in the public streets, to immediately shut off the current and that the appellant negligently failed to maintain its poles, lines, and wires in a reasonably safe condition, and negligently allowed the pole on Birch street and the alley to become decayed and rotten, by reason whereof the pole fell, and plaintiff's deceased came to his death, and that the appellant negligently failed, after being warned and advised of the fall of the pole and wires, to shut off the current, and that by reason of all of said negligence, to wit, the permitting of the pole to become decayed and its failure to shut off the current, plaintiff's intestate was killed. In its answer the appellant denied any and all negligence on its part,

and set up the plea of contributory negligence, in that plaintiff's intestate, having knowledge of the fact that the poles had fallen and carried wires with them charged with electricity, and that said wires were down, did carelessly come into contact with said wires, when he might, by the exercise of ordinary care and prudence, have avoided coming into contact therewith.

There was evidence showing or tending to show that appellee's intestate had no particular knowledge of electricity; that he had never made an examination of the premises with reference to the location of the electric light poles or wires; that he had lived in Deming but two or three weeks; that he had lived in the house in question but two days; that great excitement and confusion prevailed between the time of the alarm and the time of the accident, and that Mrs. Bishop and Mrs. Archuleta were both screaming, and children screaming, Mrs. Archuleta insisting that the house was afire and calling to appellee's intestate not to leave her, and to return, and was attempting to remove her trunk; that appellee's intestate was greatly excited; that he feared the house might take fire or some one might get hurt from the wires; that the wires emitted no sparks until after the accident; that plaintiff's intestate habitually wore glasses and was near-sighted; and that he did not have his glasses on at the time of the accident, having omitted to put them on in his haste.

The case was tried to a jury, and a verdict returned for the appellee in the sum of $18,250, and the judgment was entered accordingly.

[1] There is a manifest error occurring at the trial which will require a reversal of this case. The court gave to the jury instruction No. 24 as follows:

"You are instructed that if you find that, prior to the fatal accident, the defendant was warned and advised that there were live wires in a public street, and that, by the exercise of such reasonable care as an ordinarily prudent person would have exercised under the same circumstances, the defendant might have prevented such accident by shutting off its current, then your verdict should be for the plaintiff, unless you should find the deceased guilty of contributory negligence."

There is absolutely no evidence in this record upon which to base this instruction. The evidence shows that the wires were in fact down in the public street, but it fails to show that the appellent was notified of that fact. The evidence not only fails to show that the appellant was notified, but it conclusively establishes the fact that it was not so notified. The court, in giving this instruction, assumed that there was evidence that the appellant was so notified, and in this way submitted to the jury a false issue, based upon assumed facts, not supported by any evidence, and which was highly prejudicial to the defendant. That such action constitutes reversible error requires no citation of authority.

[2] Appellant excepted to the giving of this instruction in the following language:

"For the reason that there is no evidence in the case to the effect that the defendant was warned and advised that there were live wires in the public street, although there is evidence to the effect that the company was notified that some of its poles and wires were down."

This exception fully and fairly presented the question to the trial court and necessarily a new trial should have been awarded.

[3] Counsel for appellee seek to avoid the effect of this situation by arguing that the error complained of was not preserved in the motion for a new trial. They notice and comment upon the proviso in section 1, of chapter 42, Laws of 1917, which is as follows:

"Provided, that no motion for a new trial shall be necessary for review on appeal or writ of error of any ruling of the court upon motion or objection of an interested party in the course of the trial, provided an exception to such adverse ruling is saved."

They admit that no motion for a new trial was required to preserve the error complained of for review in this court. But they argue that while a motion for a new trial is unnecessary, if it is filed the party presenting the same should be held to have included therein all of his grounds of complaint to the action of the trial

court. They cite 3 C. J. p. 982, § 892, and Pate v. Gus Blair-Big Muddy Coal Co., 252 Ill. 198, 96 N. E. 849. This narrow construction of a statute similar to ours seems to be confined to the state of Illinois. On the other hand, in Iowa, under a similar statute, error in the giving or refusing of instructions, to which exceptions have been duly saved may be considered on appeal, although not made the basis of a motion for a new trial, or although the motion for a new trial ·in ·which they are incorporated is stricken from the files because filed too late. See 3 C. J. p. 982, § 892; Scott v. Chicago, R. I. & P. Ry. Co., 160 Iowa, 306, 141 N. W. 1065.

An examination of the terms of chapter 42, Laws of 1917, convinces us that it was the intention of the Legislature to depart entirely from the former procedure and to make it possible to review any error complained of which was duly excepted to in the trial court. To hold, as is argued by counsel for appellee in support of the judgment, that, where a motion for a new trial is in fact filed in the trial court, the appellant or plaintiff in error shall be confined to such points as are there preserved, would be to ingraft upon the section language which it does not contain, and a construction not permissible in view of the language used.

[4] Counsel for appellee further seek to avoid the consequences of the error complained of by arguing that there is no sufficient assignment of error in this court to present the question. Appellant, in its assignment No. 7 in this court, presented the following:

"The court erred in giving this instruction for the reason that there is no evidence in the case to the effect that there were live wires in a public street, and for the further reasons as are more fully stated in its exception to such instruction and motion for a new trial filed before said district court. (Transcript, pp. 237, 247, 248, 12-13, 18-19.)"

The point is made against this assignment that it violates the rule that each error relied upon shall be stated in a separate paragraph, and that assignments must be specific, and that the assignments of error are in the nature of a pleading, and are the foundation of

the plaintiff's cause in this court, citing many, if not all, of the New Mexico cases. We fail to see the application of any of these cases to the question here presented. The question here presented is whether the appellant or plaintiff in error in this court may present an assignment of error challenging the action of the trial court upon a given matter, and refer to the page in the record where the reason for such challenge is to be found. No such question has ever been presented to either the territorial court or this court. Counsel for appellee would require an assignment of error to contain upon its face, unaided by any reference to any part of the record, all that is complained of, and the reasons for the complaint. It is to be admitted that such a practice would result in a convenience to this court in the examination of the assignments, and is to be commended. But we know of no rule of law, nor of this court, prohibiting a reference to the specific page in the transcript where the reason for an exception is to be found. The requirement of the statute is that each error relied upon shall be stated in a separate paragraph; but there is no requirement that the reason or foundation for the complaint of the error must be also there stated. See section 22, chapter 43, Laws 1917. The argument of counsel for appellee, therefore, to the effect that the error is not presented by an assignment in proper form in this court is not well founded.

Another question is presented by counsel for appellant as to the contributory negligence of the deceased. It will not, however, be necessary to consider the same.

It follows that the judgment of the district court is erroneous, and should be reversed, and the cause remanded, with instructions to award a new trial; and it is so ordered.

RAYNOLDS, J., concurs.

### DISSENTING OPINION.

ROBERTS, J. (dissenting). If instruction 24 is before this court for consideration, I agree that the cause should be reversed. I do not think, however, that the

assignment of error, in this regard, justifies a consideration of the question. The assignment is as follows:

"The court erred in giving this instruction, for the reason that there is no evidence in the case to the effect that there were live wires in a public street, and for the further reasons as are more fully stated in its exception to such instruction and motion for a new trial filed before said district court. (Transcript, pp. 237, 247, 248, 12-13, 18-19.)"

Turning to the pages of the transcript indicated, we find on page 237 the instruction in question. On page 247 we find the exceptions to the instruction. The exceptions point out three claimed errors in the giving of this instruction. The statute (section 22, chapter 43, Laws 1917) requires that each error relied upon shall be stated in a separate paragraph. Under the assignment in question appellant could as well have argued either of the other two questions presented by his exceptions in the district court as the one he selected for presentation under this assignment. It is impossible for the court to look at the assignment, standing alone and unaided by the brief of appellant, and determine the question which it was seeking to present. Again, the court must look at three places in the transcript to discover the point of appellant's objection, for we are referred to three different places where these matters may be found. Now, if the court looks to the exceptions to the instruction, found in the record proper and also in the bill of exceptions, and determines that the question decided in the majority opinion is here for review, then the decision is correct; but if, perchance it should look only at the motion for new trial, to which the court is referred for the ground of attack against the instruction, then the court is clearly wrong in its conclusion, for in the motion for new trial the objection is couched in the same language as the assignment of error, viz. that there was no evidence to the effect that there were live wires in the public street, and does not go to the question of the notice which was given to appellant. Clearly, neither the assignment nor the motion for new trial presents the question upon which the appeal is determined, but it is decided upon a point made against the instruction in the exceptions filed.

No court, so far as I am aware, has permitted counsel, in their assignments of error, to simply refer to the page of the transcript for the ground of their attack upon the trial court's action. Such practice will entail unnecessary labor upon the appellate court, and will tend to confuse opposing counsel. The assignments of error are designed to present briefly and concisely, to the appellate court and counsel on the other side, the point which appellant intends to rely upon to secure a reversal. In the trial of a cause, as every practicing attorney knows, many exceptions and objections are made to the action of the trial court, out of an abundance of caution on the part of counsel, and without an opportunity on the part of the attorney to investigate the question under consideration. The purpose of filing assignments of error is to clear the cause of the chaff which has gotten into the case in the trial court. With time for study and deliberation, counsel for appellant decides what questions are really meritorious, and states these questions in his assignments of error, so that the court and counsel can save time and confusion by giving attention only to such questions. Under the rule announced in the majority opinion, it seems to me that all that is required in this regard, upon the part of appellant, is to say in the assignment of error, "I present to you for consideration the objection urged on page so and so of the transcript," and it will be here for consideration.

For the reasons stated, I dissent.

### SYLLABUS BY THE COURT.

