635 P.2d 316

Henry V. JOJOLA, Plaintiff-Appellant,

v.

BALDRIDGE LUMBER COMPANY and
Ivan Saiz, Defendants-Appellees.

No. 5095.

Court of Appeals of New Mexico.

Sept. 29, 1981.

James A. Thompson, Chris Lucero, Jr., Albuquerque, for plaintiff-appellant.

Leroi Farlow, Stephen M. Simone, Farlow & Bradley, P. A., Albuquerque, for defendants-appellees.

OPINION

SUTIN, Judge.

Plaintiff appeals from a judgment in favor of defendants based upon a jury verdict arising out of a motor vehicle collision on East Menaul Boulevard in Albuquerque. We affirm.

A. *The law of comparative negligence was not applicable.*

■ This case came on for trial on the morning of December 9, 1980. On the same day, the doctrine of comparative negligence was adopted in New Mexico. *Claymore v. City of Albuquerque* [96 N.M. 682, 634 P.2d 1234 (App.1981)]. The opinion stated that the rule adopted was applicable to "cases in which trial commences after the date on which this opinion becomes final * * *." Certiorari was granted and on February 12, 1981, the Supreme Court adopted *Claymore* in toto. *Scott v. Rizzo* [96 N.M. 682, 634 P.2d 1234 (1981)]. The *Claymore* opinion did not become final until mandate was issued by Supreme Court Rule 20 of the Rules of Appellate Procedure for Civil Cases; *Matter of Miller*, 89 N.M. 547, 555 P.2d 142 (1976); *Woodson v. Lee*, 74 N.M. 227, 392 P.2d 419 (1964).

*Claymore* was not final on December 9, 1980 and the doctrine of comparative negligence was not applicable that morning.

B. *Permitting defendants' lawyer to ask leading questions when defendant is called as an adverse witness by plaintiff was not abuse of discretion.*

Defendant Saiz, employed by defendant Baldridge Lumber Co., drove the truck that collided with plaintiff. At trial plaintiff called Saiz as an adverse witness and examined him. On cross-examination, over plaintiff's objection, the trial court permitted defendants' lawyer to examine Saiz with some leading questions. Plaintiff claims prejudicial error. We disagree.

The subject of our review is a claimed abuse of discretion. The best definitions of the "exercise of discretion" and "abuse of discretion" were quoted by Chief Judge Spiess in *State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). An "abuse of discretion" was defined as follows:

"[A]n abuse of discretion is an erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn from such facts and circumstances. While it may amount to an axiom to say that difference in judicial opinion is not synonymous with abuse of judicial discretion, it yet remains true that the latter signifies that a ruling or decision has been made that is clearly untenable. * * * It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence."

We cannot say that the rulings of the court upon the cross-examination of Saiz by his attorney were clearly untenable and clearly against reason and our rules of evidence.

Rule 611(c) of the Rules of Evidence reads:

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. *Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse* party or a *witness identified with an adverse party, interrogation may be by leading questions.* [Emphasis added.]

The last sentence emphasized allowed plaintiff to call Saiz as an adverse party and to cross-examine him with leading questions. It omits any reference to defendants' subsequent examination of Saiz. The first sentence emphasized permits parties "ordinarily" to cross-examine witnesses with leading questions.

3 Weinstein's Evidence, 611–10, 11 says: The purpose of the qualification "ordinarily" is to furnish a basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the "cross-examination" of a party by his own counsel after being called by the opponent (savoring more of re-direct) * *.

By this statement is meant that the trial court may, in its discretion, sustain objections to leading questions asked by a lawyer on cross-examination of a hostile witness or his client called as a hostile witness or adverse party by the opponent. This rule falls within the ambit of Rule 611(a) which provides that:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence * * *.

3 Weinstein's Evidence, 611–57 closes the door on reversal in the instant case. It says:

Although not explicitly stated, the rule implies what has in fact long been the case—that the matter falls within the area of trial court discretion, and that reversals on the basis of non-compliance with Rule 611(c) will be exceedingly rare.

*Morvant v. Const. Aggregates Corp.,* 570 F.2d 626, 635 (6th Cir. 1978) says:

It was not error for the trial court to permit the defense to use leading questions when cross-examining its own employees, who had been called by plaintiff on direct examination as part of her case-in-chief. While Federal Rule of Evidence 611(c) permits the use of leading questions when a party calls a witness identified with an adverse party, there is no complementary provision requiring such a witness to be cross-examined without the use of leading questions by the party to whom that witness is friendly. This matter is within the court's traditional discretion to control the mode of interrogation. We find no abuse in this case.

■ Under Rule 611(c), whether to permit counsel to interrogate witnesses with leading questions is wholly within the district court's discretion. *Morvant, supra; Riverside Ins. Co. of America v. Smith,* 628 F.2d 1002 (7th Cir. 1980); *Mitchell v. United States,* 213 F.2d 951 (9th Cir. 1954).

■ It is important to note that if the trial court is incorrect in its ruling, the record must demonstrate that the party was so prejudiced by the district court's ruling as to justify reversal. *United States v. O'Brien,* 618 F.2d 1234 (7th Cir. 1980); *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681 (5th Cir. 1979); *Nottingham Village, Inc. v. Baltimore County,* 266 Md. 339, 292 A.2d 680 (1972); *In re Rogan's Estate,* 404 Pa. 205, 171 A.2d 177 (1961); *McClard v. United States,* 386 F.2d 495 (8th Cir. 1967).

For definitions of what are "leading questions," see *State v. Weese,* 424 A.2d 705 (Me.1981); *Porter v. State,* 386 So.2d 1209 (Fla.Dist.Ct.App.1980). To arrive at a conclusion that the question asked was leading, variable factors must be considered. For this reason, we turn to *Mitchell, supra,* which explains why we should respect the rulings of the trial court. *Mitchell* said:

The object of examination is to get the facts. Whether direct or cross-questions best serve that end depends upon circumstances. The trial judge is in a better position than is this Court to determine

the precise point at which the asking of leading questions should be brought to a halt. He sees the witness and hears the testimony, and thus has a better opportunity to assess the true situation existing at any given posture of the case, than can we from the cold record. The discretion of an experienced trial judge in this, as in other respects, should not be lightly disregarded. [Id. 956.]

Plaintiff relies on *In re Rogan's Estate, supra.* In this case, the Supreme Court of Pennsylvania held a prejudicial abuse of discretion by the trial judge in permitting a lawyer to introduce his client's defense through leading questions directed to one of the defendants who had been called as a witness by the estate of decedent. If we correctly read this opinion, it held that, in cross-examination, the lawyer for defendant went beyond the perimeter of the Estate's cross-examination in order to establish a defense. Omitting the citation of authorities, the court said:

The question follows, if a party is called by his opponent as for cross-examination, what further examination of such witness may his own counsel then pursue? The cases hold that, as a general rule, the witness may be examined as to anything legitimately growing out of or related to matters inquired about in his cross-examination by the other party. He may be re-examined as to all matters tending to explain or qualify the testimony already given. However, it has been held that it is proper for the trial court to deny the witness' counsel permission to examine him at this stage *as to matters designed to introduce his main defense.* In fact, it is well established that a defendant should never be permitted to put in his defense under cover of cross-examination * * *. *"[T]o permit a party to lead out new matter, constituting his own case, under the guise of a cross-examination, is disorderly and often unfair to the opposite party * * *."* [Emphasis added.] [Id., 171 A.2d 180–181.]

Analyzation shows that, on subsequent cross-examination of a client, the court should not permit a lawyer to put "yes" answers in the mouth of a client, to establish her right to a gift *inter-vivos* when prior cross-examination by an opposing lawyer did not introduce testimony to the contrary. This type of cross-examination constitutes prejudicial abuse of discretion. Whether this rule is applicable in tort claims as distinguished from estate claims is a matter of conjecture. In vehicular collision cases, cross-examination of parties and hostile witnesses by opposing lawyers involve crucial issues of negligence and contributory negligence, principles of broad connotation. It may be difficult for a trial judge to determine whether subsequent cross-examination by the party's lawyer overstepped the bounds of propriety. This occurs when the lawyer presents new matter constituting his party's own case.

■ On appeal, the cross-examination of opposing lawyers must be carefully scanned and every doubt resolved in favor of the ruling made by the trial court. Prejudicial error should not be declared unless doubt disappears and the ruling of the court is clearly untenable.

Any benefits received by calling hostile witnesses to the stand in tort claims, especially so after they are deposed, are balanced by the risks taken when cross-examined by the witnesses' lawyer and subject to the broad discretion granted the trial judge.

■ A discussion of abuse of discretion for allowance of some leading questions asked by Saiz' lawyer and answered by Saiz is needless. Plaintiff does not point to any series of questions asked which put the "yes" answers in Saiz' mouth pertaining to negligence or contributory negligence. They pertained to introductory matters and matters on which there was no controversy. Nevertheless, we have scanned the cross-examinations of Saiz by opposing lawyers, the objections made by plaintiff's lawyers and the rulings of the court. We hold that the trial court did not act beyond the bounds of reason.

### C. The trial court's instructions were not erroneous.

 Plaintiff objected to two U.J.I. instructions, one on "proper lookout" and the other on a statutory violation. These instructions were applicable and not erroneous.

### D. Use of "collateral source" was not erroneous.

Plaintiff claims the trial court erred in allowing defendants to bring to the attention of the jury that plaintiff had received workmen's compensation benefits.

During the direct examination of plaintiff, it was determined that plaintiff was destitute; that he "didn't have no money and didn't have no food at the house, no lights and no nothing in the house"; that the doctors who treated him were not officed close to his home. Over objection the trial court allowed defendants to inquire to the extent of the medical bills paid. On cross-examination, plaintiff testified that his doctor bills were paid by his "employer's workmen's compensation."

The "collateral source" doctrine is a general law of damages. Under the "collateral source" rule, as applied here a wrongdoer may not set up in mitigation or reduction of damages that the party seeking damages has been wholly or partially compensated by insurance, where such insurance was not procured by the wrongdoer. *Martinez v. Knowlton*, 88 N.M. 42, 536 P.2d 1098 (Ct.App.1975); *Selgado v. Commercial Warehouse Company*, 86 N.M. 633, 526 P.2d 430 (Ct.App.1974); *Trujillo v. Chavez*, 76 N.M. 703, 417 P.2d 893 (1966).

The evidence allowed was not erroneous for several reasons: (1) no amount of compensation was named that was paid plaintiff for doctor bills; (2) the jury did not get to the issue of damages because it rendered a verdict for defendants, *Rice v. Shenk*, 293 Pa. 524, 143 A. 231 (1928); (3) it is not erroneous when used to test the credibility of a plaintiff who claims that he had fallen behind in his bills and wanted to catch up on them and support his family,

*Gladden v. P. Henderson & Co.*, 385 F.2d 480 (3d Cir. 1967); *Garfield v. Russell*, 251 Cal.App.2d 275, 59 Cal.Rptr. 379 (1967); or (4) where defendant seeks to impeach plaintiff who testified that he went back to work because he needed money for support of his family, *Hack v. State Farm Mutual Automobile Ins. Co.*, 37 Wis.2d 1, 154 N.W.2d 320 (1967).

We find no error in admission of the "collateral source" evidence.

Affirmed. Plaintiff shall pay the costs of this appeal.

IT IS SO ORDERED.

DONNELLY, J., concurs.

HENDLEY, J., concurs in result on Issue B.