787 P.2d 414

**E.W. RICHARDSON and Richardson Properties, Inc., d/b/a Richardson Ranch, Plaintiffs–Appellees and Cross–Appellants,**

v.

**Roger RUTHERFORD, Glenda Rutherford and Randall Rutherford, Defendants–Appellants and Cross–Appellees.**

No. 17673.

Supreme Court of New Mexico.

Feb. 8, 1990.

Rehearing Granted Feb. 19, 1990.

496

Taylor, Gaddy, Rakes & Hall, Brad D. Hall, Albuquerque, for defendants-appellants and cross-appellees.

Paul R. Caldwell, Linda Martinez–Palmer, Santa Fe, Foy, Foy & Jollensten, Silver City, for plaintiffs-appellees and cross-appellants.

## OPINION

RANSOM, Justice.

E.W. Richardson, an absentee ranch owner, and Richardson Properties, Inc., doing business as Richardson Ranch, brought suit against the manager of their ranch on sixty-one counts of conversion of property, fraud, and for misuse, abuse or neglect of buildings and equipment. (Unless otherwise indicated, E.W. Richardson and Richardson Properties, Inc., are referred to

herein jointly as "Richardson.") Joined as defendants with the ranch manager, Roger Rutherford, were his wife Glenda and their son Randall. The complaint, first filed in Bernalillo County for $2,000,000 compensatory plus punitive damages, and then dismissed on grounds of forum non conveniens, was refiled for $3,000,000 in Grant County. (Richardson's counsel of record on this appeal and at trial were not his counsel prior to or at the time his lawsuit was filed and then refiled.)

Preceding the filing of these complaints, however, Mr. Richardson personally had confronted Rutherfords, accusing them of various acts of theft and embezzlement. Rutherfords alleged at trial that Richardson threatened them with physical violence. Although, Rutherfords contend, they protested to Richardson that his allegations of wholesale corruption were unfounded, Richardson nevertheless forced them to accompany him to a motel in Silver City, New Mexico, and forced them to enter into a "debt settlement agreement" by which Glenda and Randall conveyed to Richardson 636 unencumbered and 1200 encumbered acres of Arizona ranch land. In return, Richardson promised to pay $183,000 to secure the land from foreclosure and to forego legal action on his various allegations of impropriety in the management of Richardson Ranch. Richardson also promised to split with Glenda and Randall any net profit from the resale of the Arizona land, after deducting Richardson's expenses and the value of anything "missing" from Richardson Ranch. Rutherfords were to cooperate in determining the value of missing or damaged ranch property.

After the agreement was signed, Richardson terminated Rutherfords' employment and ejected them from Richardson Ranch. Rutherfords, apparently penniless, spent the next several months living in their car. Although Roger Rutherford did admit responsibility for the removal of some timber from ranch property, Rutherfords did not admit to any further improprieties nor help to compile a list of missing or damaged property subsequent to the signing of the agreement.

Richardson's complaints were filed within six months after the debt settlement agreement was signed. Roger and Glenda Rutherford counterclaimed for assault and false imprisonment, and all three Rutherfords counterclaimed for conversion of personal property and abuse of civil process. Also, Roger sought damages for defamation, and Glenda sought damages for intentional infliction of emotional distress. Rutherfords additionally claimed that Richardson used duress to obtain real property interests from Glenda and Randall.

The jury awarded $3,000 compensatory damages to Richardson as against Roger only, for conversion of property; $10,000 compensatory damages to Roger as against Richardson, plus $50,000 in punitive damages as against each plaintiff, Richardson and Richardson Properties, Inc.; $25,000 in compensatory damages to Glenda, plus $37,500 in punitive damages as against each plaintiff; and $10,000 in compensatory damages to Randall, plus $25,000 in punitive damages as against each plaintiff. Each of the Rutherfords were specially awarded their attorney's fees and expenses for defending the action. With respect to the claim of duress to obtain real property, the jury found that the fair market value of the Arizona land in question was $508,800. The jury's awards of compensatory and punitive damages in favor of Roger were lump sums unspecified as to whether for defamation *or abuse of process*. The jury's awards of compensatory and punitive damages in favor of Glenda were lump sums unspecified as to whether for assault, false imprisonment, intentional infliction of emotional distress, *or abuse of process*. The jury's awards of compensatory and punitive damages in favor of Randall were lump sums unspecified as to whether for conversion of personal property *or abuse of process*.

On Rutherfords' respective claims of abuse of process, the trial court granted to Richardson a judgment notwithstanding the verdicts (j.n.o.v.). On the claims of Glenda and Randall that Richardson was liable for duress to obtain real property, a set-off of $183,000 was granted to Richardson for trust fees, expenses and other pay-

ments made to get clear title. The fair market value of $508,800 reduced by $183,000 amounted to $325,800, or $162,900 each for Glenda and Randall. On his jury verdict of $25,000 in punitive damages against each plaintiff, Randall accepted a remittitur in the amount of $25,000 from the $50,000 total. With respect to Roger's claim of defamation, a new trial was granted to Richardson.

Richardson has fully and completely satisfied the judgment in favor of Glenda and Randall.[1] Although it would appear that Glenda and Randall have joined with Roger in claiming that it was error to grant j.n.o.v. on the Rutherfords' respective claims of abuse of process, satisfaction of the judgment in favor of Glenda and Randall

has made moot their claim to error in that regard, unless we were to grant a new trial on the cross-appeal. As discussed below, we affirm the court on all cross-appeal issues. The determinative point on appeal, therefore, is Roger's claim of error in the grant of j.n.o.v. on abuse of process. First, however, we address Richardson's cross-appeal.[2] Richardson seeks a new trial based upon allegations that opposing counsel was guilty of improper conduct that inflamed the jury, and because evidence was presented through leading questions.

■ *Trial court did not abuse discretion in allowing argument as to relative wealth of the parties.* As specifically acknowledged by Rutherfords in their answer brief, the issue of wealth and poverty was

---

1. Richardson did not object to the court's entry of judgment on the jury's single award of compensatory and punitive damages under all claims, including the abuse of process claims on which the court granted j.n.o.v. When a j.n.o.v. is granted on one or more of multiple claims for relief, judgment for damages cannot be entered on the remaining claim or claims unless the jury has specified the damage award for the remaining claim or claims. *See Jackson v. Deming Ice and Elec. Co.*, 26 N.M. 3, 189 P. 654 (1919) (submission of false issue to jury assumes a state of facts not supported by evidence and requires reversal); *Salinas v. John Deere Co.*, 103 N.M. 336, 707 P.2d 27 (Ct.App.1984) (fact that other evidence supports a general verdict does not allow appellate court to affirm that verdict if an erroneous instruction was given), *cert. quashed*, 103 N.M. 287, 705 P.2d 1138 (1985); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Smith*, 406 So.2d 913 (Ala.Civ.App.) (reversible error when instruction on mental anguish as an element of damages was improper and jury has rendered general verdict making it impossible to determine from record the basis of the award), *writ denied, ex parte Smith*, 406 So.2d 916 (Ala.1981) *Olmstead v. Miller*, 383 N.W.2d 817 (N.D.1986) (error in instructing on future damages required reversal when it was impossible to determine from general verdict the amount attributed to property damage, personal injury up to the time of trial, and future damages). Although no error has been preserved for appeal, the problem is alluded to under Randall's point that it was error to order remittitur on the punitive damages. He argues, "The District Court reduced Randall's punitive damages by 50%, presumably because half was for abuse of process and half for conversion. The jury could easily have awarded all $50,000.00 for Richardson's malicious conversion." Actually, no presumption is possible for allocation of an unspecified award.

2. Although not raised by Rutherfords in their answer brief to the cross-appeal, we note that in some instances, but by no means in all instances, satisfaction of the judgment by an appellant may operate to cut off that party's right of appeal. The majority rule appears to be that voluntary satisfaction of judgment renders an appeal moot. *See, e.g., Lytle v. Citizen's Bank*, 4 Ark.App. 294, 630 S.W.2d 546 (1982); *Paulu v. Lower Arkansas Valley Council of Gov'ts*, 655 P.2d 1391 (Colo.Ct.App.1982); *International Business Mach. Corp. v. Lawhorn*, 106 Idaho 194, 677 P.2d 507 (Ct.App.1984); *Vap v. Diamond Oil Producers, Inc.*, 9 Kan.App.2d 58, 671 P.2d 1126 (1983); *First Sec. Bank v. Income Props., Inc.*, 208 Mont. 121, 675 P.2d 982 (1984). *But see Briarcliffe West Townhouse Owners Ass'n v. Wiseman Constr. Co.*, 118 Ill.App.3d 163, 73 Ill.Dec. 503, 454 N.E.2d 363 (1983), *appeal after remand*, 134 Ill.App.3d 402, 89 Ill.Dec. 351, 480 N.E.2d 833 (1985). In *Culp v. Sandoval*, 22 N.M. 71, 159 P. 956 (1916), this Court held that satisfaction of a judgment subsequent to posting of a supersedeas bond by appellant showed that appellant had acquiesced in the judgment and thus precluded the appeal. We concluded that since the filing of the supersedeas bond effectively removed the possibility of any legal compulsion on the appellant to satisfy the judgment pending appeal, the appellant's subsequent satisfaction of the judgment was voluntary. *Culp*, 22 N.M. at 83, 159 P. at 960–61. We reaffirm our holding in *Culp* that certain circumstances exist in which an appellant's satisfaction of the judgment demonstrates an acquiescence in that judgment that is inconsistent with the right of appeal. Additionally, equities may intervene after satisfaction of the judgment, militating against the maintenance of an appeal. However, absent proper presentation of this issue by the parties, we decline to address this point further.

used to argue to the jury that Richardson's motive in filing a three million dollar lawsuit was to gain clear title to Glenda and Randall's land in Arizona by coercing them to settle. Indeed, Rutherford's attorneys *had commented* on the relative wealth and poverty of the parties prior to a ruling by the trial court that it would allow the introduction of *evidence* of Richardson's wealth *on the issue of punitive damages.* Richardson contends that these comments improperly inflamed the passions of the jury, and, therefore, that the court erred in refusing to grant a new trial. We disagree.

Even Richardson cites authority for the unquestioned proposition that reference to wealth or poverty is proper when relevant to the issues in a particular case. Richardson fails, however, to acknowledge what we see as the relevance of wealth and poverty to Rutherfords' counterclaim. We conclude the trial court did not err in this regard.

*Use of leading questions generally within the trial court's discretion.* Richardson also argues the court abused its discretion in allowing leading questions by Rutherfords' counsel. With cursory analysis, Richardson's brief in chief sets forth numerous examples of the use of leading questions. Rutherfords argue in their answer brief that many of these examples are from cross-examination, some involve matters already raised in previous testimony, some were questions as to which no objection was made, and, in some instances, the district court sustained the objection. It lay within the trial court's discretion, Rutherfords argue, to allow the use of leading questions. *See Jim v. Budd,* 107 N.M. 489, 760 P.2d 782 (Ct.App.), *cert. denied,* 106 N.M. 95, 739 P.2d 509 (1987); *Jojola v. Baldridge Lumber Co.,* 96 N.M. 761, 635 P.2d 316 (Ct.App.1981); SCRA 1986, 11–611(C).

■ Moreover, as Rutherfords point out, by agreement of the parties, Rutherfords presented their case in chief on the counterclaims simultaneously with their defense. It is true that a party should not by means of leading questions on cross-examination present its case in chief or substi-

tute its words for those of a witness. *Jojola,* 96 N.M. at 764, 635 P.2d at 319; *State v. Orona,* 92 N.M. 450, 589 P.2d 1041 (1979). However, it is also true that, when the issues relevant to the opposing party's theory of the case overlap significantly with the issues relevant to cross-examination, it may be difficult to distinguish between permissible cross-examination and impermissible use of leading questions to present new evidence. *Jojola,* 96 N.M. at 764, 635 P.2d at 319. We cannot say on the basis of the portions of the record cited by Richardson that the trial court abused its discretion in most of the instances in which leading questions were used. Absent specific analysis by Richardson as to why these questions were improper, we conclude the trial court did not act improperly in these instances.

■ *References to value of golf course and admission of documents of value of other properties was harmless error.* One of the leading questions asked at several points by Rutherfords' counsel, however, was improper. Several of Richardson's witnesses were asked if they were aware that property "just across the road" from Glenda and Randall's land had been sold for $1000 per acre for use as a golf course. Rutherfords never properly established that this land was comparable for valuation purposes.

The trial court also allowed the introduction of several documents purporting to show the price received for other pieces of property in the same area. The only expert testimony on these properties was given by Richardson's expert on cross-examination, and he denied that the properties were comparable. Richardson timely objected to the introduction of these documents on grounds of relevance. Rutherfords offered no expert testimony to rebut that of Richardson's expert.

Rutherfords assert that use of the documents for purposes of cross-examination was not error, even absent a foundation to show they were comparable to Glenda and Randall's property. We disagree. Although the question of whether a foundation to establish relevance must be laid

prior to the introduction of evidence lies within the discretion of the trial court, see SCRA 1986 11–104(B) and –401, we believe the court acted improperly here in allowing this evidence to go to the jury without a showing that the properties were comparable.

However, under the facts of this case we conclude that Richardson has failed to show he was prejudiced by admission of this evidence. The jury valued the unencumbered portion of Glenda and Randall's property at $800 per acre. Evidence properly was admitted that this was the value placed on the estate by Richardson himself in response to an inquiry. *See City of Albuquerque v. Ackerman*, 82 N.M. 360, 482 P.2d 63 (1971) (owner of real property is presumed to have special knowledge as to its value by reason of ownership and therefore is competent to testify to value). Although Richardson's expert testified that the land was worth only $300 per acre, the jury was not obligated to accept this estimate as final. Moreover, the only testimony heard by the jury regarding the evidence that had been admitted improperly was that of Richardson's expert, who denied that each of the properties was comparable. We conclude Richardson has failed to show that he was prejudiced by admission of this evidence.

■ *Remarks by Rutherfords' attorneys not shown to necessitate a new trial; no cumulative error.* Richardson argues that various remarks by Rutherfords' attorney (other than those that concerned relative wealth or poverty) were inflammatory, constituted attorney misconduct, and required the trial court to order a new trial. Although Richardson acknowledges that attorney misconduct does not require a new trial unless "glaringly improper or unethical", *Wirth v. Commercial Resources, Inc.*, 96 N.M. 340, 347, 630 P.2d 292, 299 (Ct.App.), cert. denied, 96 N.M. 543, 632 P.2d 1181 (1981), he again fails to present a specific argument showing that the comments at issue violate this standard. Instead, Richardson simply posits that the comments were "glaringly unethical" and that they influenced the jury's verdict. Ab-

sent an explication of why the comments were improper, and a showing of prejudice, we do not reach this issue. Given our resolution of the above issues, we also conclude that Richardson failed to show the existence of cumulative error. *See State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984).

*Trial court erred in granting j.n.o.v. on abuse of process claim.* On the claim of abuse of process on the part of Richardson, the jury was instructed that Rutherfords had the burden of proving that Richardson filed the lawsuit with an ulterior motive, using the complaint for reasons other than the regular prosecution of his charge. It was further explained that an abuse of process arises when there has been a perversion of the court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to perform some collateral act which he legally and regularly would not be compelled to do.

Rutherfords argue that "[t]he filing of the suit itself, under the circumstances of this case, is an attempt to misuse process for collateral purposes * * *. The attempt completes the tort * * *. The attempts to misuse the process in this case include filing suit under such circumstances, the nature of the suit, the parties named, the parties not named, misusing exhibits [attached to the complaint], and the amounts sought, all of which lead to the conclusion that the suit itself was the improper act." *See Myers v. Cohen*, 5 Haw.App. 232, 687 P.2d 6 (attempt to achieve improper collateral objective completes tort of abuse of process), *overruled on other grounds*, 67 Haw. 389, 688 P.2d 1145 (1984).

Richardson requested an instruction that, in order to prove their claim of abuse of process, Rutherfords had to prove specifically that Richardson committed some act outside the regular and legitimate use of process resulting in interference with either the person or the property of Rutherfords. The trial court refused this request. "Some act outside the regular and legitimate use of process" and "interference with either the person or the property"

have been referred to in the brief-in-chief as "subsequent acts" and "special damages,"[3] respectively. In granting the j.n. o.v., the trial court held that the misuse of process must be *subsequent* to issuance of process. It is because of failure to instruct on such an element or elements of abuse of process, and the absence of substantial evidence to support a showing of such element or elements, that the trial court granted j.n.o.v. The trial court specifically found that *subsequent* misuse of process was not established by the evidence.

Consistent with the trial court's instruction in this case, we held in *Farmer's Gin Co. v. Ward*, 73 N.M. 405, 407, 389 P.2d 9, 11 (1964), that "[i]n order to sustain an action for abuse of process two elements are essential, (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." Similarly, the *Restatement (Second) of Torts* § 682 (1976) provides:

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

In ruling that a "subsequent act" was necessary for an abuse of process claim, the court relied on Arizona case law. See, e.g., *Morn v. City of Phoenix*, 152 Ariz. 164, 730 P.2d 873 (Ct.App.1986); *Joseph v. Markovitz*, 27 Ariz.App. 122, 551 P.2d 571 (1976); *see also* W.P. Keeton, D.B. Dobbs, R.E. Keeton, & D.G. Owen, *Prosser and Keeton on the Law of Torts* § 121 (5th ed. 1984) [hereinafter *Prosser and Keeton*]. Although *Markovitz* does hold that abuse of process requires an overt act other than the initiation of a lawsuit, other authority relied upon by the district court does not support its ruling. Moreover, we find persuasive the reasoning of those courts that hold a claim for abuse of process may be maintained in some cases when the only overt act is the initiation of litigation.

Although closely related to the tort of malicious prosecution, abuse of process serves to protect different interests. Prosser writes:

> The action for malicious prosecution, whether it be permitted for criminal or civil proceedings, has failed to provide a remedy for a group of cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an

**3.** The phrase "an interference with either the person or property of the plaintiff" appears in a number of New Mexico cases on abuse of process. *See, e.g., Farmer's Gin Co. v. Ward*, 73 N.M. 405, 407, 389 P.2d 9, 11 (1964); *Hertz Corp. v. Paloni*, 95 N.M. 212, 215, 619 P.2d 1256, 1259 (Ct.App.1980). The parties' debate concerning the necessity of proving "special damages" centers around this phrase, with Richardson equating it with the necessity of showing the "arrest of the person or seizure of property" required in malicious prosecution cases.

Although some authority exists requiring the plaintiff in abuse of process cases to make the latter showing, other courts have rejected this requirement as inconsistent with the approach of the *Restatement of Torts (Second)*. *See, e.g., Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (Ct.App.1982); *cf., Mills County State Bank v. Roure*, 291 N.W.2d 1 (Iowa 1980) (loss of income sufficient to satisfy any special injury rule in abuse of process cases). We do not agree with the parties that our courts have used "interference with the person or property" and "arrest of the person or seizure of property" synonymously. In *Farmer's Gin Co.*, we distinguished between those two phrases. 73 N.M. at 407,

409, 389 P.2d at 11, 12. In fact, we gave the second situation as merely one example of the first. *Id.* at 407, 389 P.2d at 11. In *Paloni*, the court of appeals held that the counterplaintiff had not been damaged by Hertz' repossession of the car held by the counterplaintiff in constructive bailment. The decision, however, did not rest on the fact that the counterplaintiff's property had not been subjected to seizure, but rather on the fact that he had suffered no injury at all. The court also described the "interference" standard simply as resulting damages. 95 N.M. at 215, 619 P.2d at 1259; *see also Datacom Interface, Inc. v. Computer World, Inc.*, 396 Mass. 760, 489 N.E.2d 185, 195 (1986).

We do not reach, however, the question of whether "special damages" had to be shown in the present case. Richardson acknowledged to the district court that, absent a requirement for a "subsequent act," evidence existed from which the jury could have found damages. The argument for special damages was raised only in the context of the contention that there was no evidence of a subsequent act that gave rise to such damages. Since we conclude in the body of the opinion that a subsequent act is not required, we do not address this issue further.

ulterior purpose for which it was not designed. In such cases, a tort action has been developed for what is called abuse of process.

*Prosser and Keeton, supra,* § 121, at 897. Prosser goes on to note:

> Some definite *act* or threat not authorized by the process, or *aimed at an objective not legitimate in the use of the process, is required;* and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions * * *. Some of the decisions have said that there must be an improper act, such as an extortion attempt, after the process has been issued and that an act committed beforehand is not enough. Most of these cases probably stand for the narrower proposition that there must be an overt act and that bad purpose alone is insufficient. Thus a demand for collateral advantage that occurs before the issuance of process may be actionable * * *.

*Id.* at 898 (emphasis added). Similarly, another commentator has written:

> [I]nitiation of litigation itself can constitute a misuse of the system if * * * sufficiently illegitimate * * *. It should not matter that the only 'process' that has been issued is a complaint. It is the abuse of the legal system that is at issue, not of writs * * *. The actor whose perversity is so proved, and who, by initiating litigation, is in fact doing more than merely initiating that litigation, does not deserve the protection of the prophylactic barriers to the malicious prosecution action, which were designed to assure that liability is imposed only on the perverse.

1 F.V. Harper, F.J. James & O.S. Grey, *The Law of Torts* § 4.9 (2d ed. 1986).

■ Notwithstanding the different interests being protected by recognition of the tort of malicious prosecution and by recognition of the tort of abuse of process, Rutherfords acknowledge that assuring contin-

ued access to the courts is an important consideration limiting the expansion of liability for abuse of process. We agree. We believe this policy is served adequately by requiring proof that (1), as set out in the *Restatement (Second)*, the defendant's *primary motive* was to accomplish an illegitimate end, and (2), as emphasized by Prosser, *an overt act* was committed designed to effect this end.

While a subsequent act may suffice to prove an abuse of process which was appropriate when issued, it is not an essential element. The initial use of process itself may constitute the required overt act under the facts. *See Mills County State Bank v. Roure,* 291 N.W.2d 1 (Iowa 1980); *Fishman v. Brooks,* 396 Mass. 643, 487 N.E.2d 1377 (1986). We believe the trial court's instruction, drawn from *Farmer's Gin Co.,* effectively stated this requirement. We thus are in agreement with the court in *Mills,* when it wrote:

> The existence of this cause of action recognizes that even in meritorious cases the legal process may be abused. That abuse involves using the process to secure a purpose for which it was not intended. We can see no reason why there must be subsequent activity to support the cause of action. *Such activity may be very probative in determining the intent to abuse; however, there need not be such a subsequent action to commit the tort.* To rule otherwise would protect the tortfeasor when the abuse is most effective—where the issuance of the process alone is sufficient to accomplish the collateral purpose.

*Mills,* 291 N.W.2d at 5 (emphasis added).

■ Richardson acknowledged after trial that evidence existed from which the jury could find the existence of an ulterior motive. At issue in this case, therefore, is whether the filing of a three million dollar lawsuit for an improper ulterior motive was an act upon which the jury could find abuse of process, not whether such a motive existed.[4] From the lack of investigation rea-

---

**4.** In cases in which the identification of the defendant's primary motive for filing suit is disputed, the best procedure may be, once the

plaintiff has presented prima facie evidence of improper motive, to then shift the burden of producing evidence to the defendant to show

sonably necessary to identify the probable extent of the alleged injury, a damage claim upon refiling of the complaint that exceeded the total value of the Richardson Ranch, and the excessive, unreasonable attachment of the exhibits to the complaint, the jury could have concluded that the filing of the lawsuit was itself an overt act designed to intimidate Rutherfords into a settlement. *Cf. Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876 (Ct.App.1982) (filing of "counter-counterclaim" that repeated essence of original complaint and other pretrial activities were evidence that supported inference of an intent to make litigation so extensive and tiresome that other party would settle); *Fishman v. Brooks*, 396 Mass. 643, 487 N.E.2d 1377 (1986) (the fact that defendant knew or had reason to know of groundlessness of suit was evidence tending to show the filing of the claim was used for ulterior purpose); *Bull v. McCuskey* 96 Nev. 706, 615 P.2d 957 (1980) (failure to investigate suit adequately and total absence of expert testimony on medical malpractice claim constituted evidence supporting inference that attorney intended to coerce nuisance settlement from doctor), *overruled in part on other grounds, Ace Truck and Equip. Rentals, Inc. v. Kahn*, 103 Nev. 503, 746 P.2d 132 (1987).

We therefore conclude the trial court erred in granting j.n.o.v. *See generally Bookout v. Griffin*, 97 N.M. 336, 639 P.2d 1190 (1982) (j.n.o.v. proper only when jury could not have reached verdict based on evidence or permissible inference). Accordingly, we remand Roger's claim of abuse of process for a new trial.[5]

*Issue of error in ordering a remittitur or, in the alternative, a new trial, not reached on appeal.* With regard to Randall's appeal of the remittitur,

it has long been the law of this state that the trial court may require a remittitur as an alternative to the grant of a new trial to the unsuccessful party. *Henderson v. Dreyfus*, 26 N.M. 541, 556–57, 191 P. 442, 448 (1919). Cases of unliquidated damages, and likewise cases where exemplary or punitive damages have been awarded, are included in the rule. *Id.* In *Montgomery v. Vigil*, 65 N.M. 107, 113, 332 P.2d 1023, 1027 (1958) (quoting *Hall v. Stiles*, 57 N.M. 281, 285, 258 P.2d 386, 389 (1953)), we stated:

> [T]he findings of the jury should not be disturbed as excessive, except in extreme cases, as where it results from passion, prejudice, partiality, sympathy, undue influence, or some corrupt cause or motive where palpable error is committed by the jury, or where the jury has mistaken the measure of damages. However, the mere fact that a jury's award is possibly larger than the court would have given is not sufficient to disturb a verdict.

When the evidence, viewed in the light most favorable to the verdict, does not support the amount of damages awarded by the jury, but there is no indication that passion or prejudice existed such as would vitiate the verdict on the question of liability, a court in its discretion may order remittitur as an alternative to a new trial. *Id.; Chavez–Rey v. Miller*, 99 N.M. 377, 379, 658 P.2d 452, 454 (Ct.App.), *cert. denied*, 99 N.M. 358, 658 P.2d 433 (1983). In determining whether a jury verdict is excessive, the court does not weigh the evidence, but determines the excessiveness as a matter of law. *See Transwestern Pipe Line Co. v. Yandell*, 69 N.M. 448, 367 P.2d 938 (1961); *Chavez–Rey*, 99 N.M. at 379, 658 P.2d at 454.

the existence of another, proper motive that was the primary reason for the decision to file suit. If the defendant produces such evidence, a court then would afford the plaintiff an opportunity to rebut the proffered explanation. *See, e.g., Chavez v. Manville Products Corp.*, 108 N.M. 643, 648, 777 P.2d 371, 376, n. 2 (1989) (shifting burden of production in retaliatory discharge cases). We do not, however, reach this question here.

5. As explained elsewhere in this opinion in the context of the claims of Glenda and Randall, since the jury returned a general verdict in favor of Roger, we cannot determine whether they found liability based on the abuse of process claim that was properly before them, or on the defamation claim, as to which the court granted a new trial. Thus, a new trial on the abuse of process claim also is in order. *See* n. 1.

In *Hudson v. Otero*, 80 N.M. 668, 459 P.2d 830 (1969), however, this Court held that appeals by a party accepting a remitted judgment are disallowed, thus encouraging both offers and acceptances of remittitur and tending to terminate litigation. *Accord, Chavez–Rey*, 99 N.M. at 379, 658 P.2d at 454. In this case, Randall accepted the remitted judgment, and that judgment since has been satisfied by Richardson. We conclude that the propriety of the remittitur is not before us on appeal.

This case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, Chief Justice, and BACA, J., concur.