Jerome S. WAGSHAL, Appellant,

v.

Mark W. FOSTER, et al., Appellees.

No. 93–5063.

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1994.

Decided July 15, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied Sept. 16, 1994.*

---

* Mikva and Wald, Circuit Judges, did not participate in this matter.

Jerome S. Wagshal argued the cause and filed the briefs pro se.

Charles B. Wayne argued the cause for appellees. With him on the brief were Charles R. Donnenfeld and Jeffery A. Tomasevich.

Before: SILBERMAN, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

This case presents the issue of whether a court-appointed mediator or neutral case evaluator, performing tasks within the scope of his official duties, is entitled to absolute immunity from damages in a suit brought by a disappointed litigant. The district court found such immunity and we agree.

\* \* \*

In June 1990, appellant Jerome S. Wagshal filed suit in D.C. Superior Court against Charles E. Sheetz, the manager of real property owned by Wagshal. In October 1991 the assigned judge, Judge Richard A. Levie, referred the case to alternative dispute resolution pursuant to Superior Court Civil Rule

16 [1] and the Superior Court's alternative dispute resolution ("ADR") program. While the program does not bind the parties (except when they agree to binding arbitration), participation is mandatory. See Superior Court Rules of Civil Procedure 16(j).

Judge Levie chose "neutral case evaluation" from among the available ADR options, and appointed Mark W. Foster as case evaluator.[2] Pursuant to the order of appointment, the parties signed a "statement of understanding" providing (among other things) that the proceedings would be confidential and privileged, and that the evaluator would serve as a "neutral party". Moreover, the parties were not allowed to subpoena the evaluator or any documents submitted in the course of evaluation, and "[i]n no event [could the] mediator or evaluator voluntarily testify on behalf of a party." Wagshal signed in January 1992 (under protest, he alleges).

After Foster held his first session with the parties, Wagshal questioned his neutrality. Foster then asked that Wagshal either waive his objection or pursue it; if Wagshal made no response waiving the objection, Foster would treat it as a definite objection. Receiving no response by the deadline set, and later receiving a communication that he regarded as equivocal, Foster wrote to Judge Levie in February 1992, with copies to counsel, recusing himself. The letter also reported to the judge on his efforts in the case and recommended continuation of ADR proceedings. In particular, Foster said that the case was one "that can and should be settled if the parties are willing to act reasonably", and urged the court to order Wagshal, "as a precondition to any further proceedings in his case, to engage in a good faith attempt at mediation." He also urged Judge Levie to "consider who should bear the defendant's costs in participating" in the mediation to date.

Judge Levie then conducted a telephone conference call hearing in which he excused Foster. Wagshal's counsel voiced the claim that underlies this suit—that he thought Foster's withdrawal letter "indicates that he had certain feelings about the case. Now, I'm not familiar with the mediation process but as I understood, the mediator is not supposed to say, give his opinion as to where the merits are." On that subject, Judge Levie said, "I don't know what his opinions are and I'm not going to ask him because that's part of the confidentiality of the process." Neither Wagshal nor his counsel made any objection or motion for Judge Levie's own recusal.

Judge Levie soon after appointed another case evaluator, and Wagshal and the other parties settled the *Sheetz* case in June 1992. In September 1992, however, Wagshal sued Foster and sixteen others (whom he identified as members of Foster's law firm) in federal district court, claiming that Foster's behavior as mediator had violated his rights to due process and to a jury trial under the Fifth and Seventh Amendments, and seeking injunctive relief and damages under 42 U.S.C. § 1983. Besides the federal claims, he threw in a variety of local law theories such as defamation, invasion of privacy, and intentional infliction of emotional distress. His theory is that Foster's conduct as case evaluator forced him to settle the case against his will, resulting in a far lower recovery than if he had pursued the claim.

The district court granted the defendants' motion to dismiss with prejudice, holding that Foster, like judges, was shielded by absolute immunity. We affirm.

\* \* \*

We may quickly dispatch Wagshal's claim to injunctive relief. While such a claim is not barred by judicial immunity, *Pulliam*

---

**1.** Superior Court Rule 16(b) provides in part: "At [the initial scheduling and settlement] conference the judge will ... explore the possibilities for early resolution through settlement or alternative dispute resolution techniques...."

**2.** We use the terms "case evaluator" and "mediator" interchangeably in this opinion. Each acts as a neutral third party assisting the parties to a dispute in exploring the possibility of settlement, the principal difference being that implicit in the name: the case evaluator focuses on helping the parties assess their cases, while the mediator acts more directly to explore settlement possibilities. See Melinda Ostermeyer, Alternative Dispute Resolution Programs 6 (Superior Court of the District of Columbia, Multi–Door Dispute Resolution Division 1992).

*v. Allen,* 466 U.S. 522, 528–43, 104 S.Ct. 1970, 1973–82, 80 L.Ed.2d 565 (1984), Wagshal lacks standing to seek such an injunction on behalf of others, see, e.g., *Los Angeles v. Lyons,* 461 U.S. 95, 108–09, 103 S.Ct. 1660, 1668–69, 75 L.Ed.2d 675 (1983), and has alleged no likelihood whatever that he himself will again suffer the alleged injury, *id.* at 105–10, 103 S.Ct. at 1666–70.

▪ Foster's first line of defense against the damages claim was the assertion of quasi-judicial immunity. The immunity will block the suit if it extends to case evaluators and mediators, so long as Foster's alleged actions were taken within the scope of his duties as a case evaluator.

▪ Courts have extended absolute immunity to a wide range of persons playing a role in the judicial process. These have included prosecutors, *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); law clerks, *Sindram v. Suda,* 986 F.2d 1459, 1460 (D.C.Cir.1993); probation officers, *Turner v. Barry,* 856 F.2d 1539, 1541 (D.C.Cir.1988); a court-appointed committee monitoring the unauthorized practice of law, *Simons v. Bellinger,* 643 F.2d 774, 779–82 (D.C.Cir.1980); a psychiatrist who interviewed a criminal defendant to assist a trial judge, *Schinner v. Strathmann,* 711 F.Supp. 1143 (D.D.C.1989); persons performing binding arbitration, *Austern v. Chicago Bd. Options Exch., Inc.,* 898 F.2d 882, 886 (2d Cir. 1990); and a psychologist performing dispute resolution services in connection with a lawsuit over custody and visitation rights, *Howard v. Drapkin,* 222 Cal.App.3d 843, 271 Cal. Rptr. 893, 905 (Ct.App.1990). On the other hand, the Supreme Court has rejected absolute immunity for judges acting in an administrative capacity, *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988), court reporters charged with creating a verbatim transcript of trial proceedings, *Antoine v. Byers & Anderson, Inc.,* —— U.S. ——, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), and prosecutors in relation to legal advice they may give state police, *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The official claiming the immunity "bears the burden of showing that such immunity is justified for the function in question." *Antoine,* —— U.S. at —— – —— n. 4, 113 S.Ct. at 2169–70 n. 4 (citing *Burns v. Reed,* 500 U.S. at 486, 111 S.Ct. at 1939).

We have distilled the Supreme Court's approach to quasi-judicial immunity into a consideration of three main factors: (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct. *Simons v. Bellinger,* 643 F.2d at 778 (citing *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978)).

In certain respects it seems plain that a case evaluator in the Superior Court's system performs judicial functions. Foster's assigned tasks included identifying factual and legal issues, scheduling discovery and motions with the parties, and coordinating settlement efforts. These obviously involve substantial discretion, a key feature of the tasks sheltered by judicial immunity and the one whose absence was fatal to the court reporter's assertion of immunity in *Antoine.* See —— U.S. at ——, 113 S.Ct. at 2170–71. Further, viewed as mental activities, the tasks appear precisely the same as those judges perform going about the business of adjudication and case management.

Wagshal protests, however, that mediation is altogether different from authoritative adjudication, citing observations to that effect in radically dissimilar contexts. See, e.g., *General Comm. of Adjustment v. Missouri–Kan.–Tex. R.,* 320 U.S. 323, 337, 64 S.Ct. 146, 152–53, 88 L.Ed. 76 (1943) ("The concept of mediation is the antithesis of justiciability."). However true his point may be as an abstract matter, the general process of encouraging settlement is a natural, almost inevitable, concomitant of adjudication. Rule 16 of the Federal Rules of Civil Procedure, for example, institutionalizes the relation, designating as subjects for pre-trial conferences a series of issues that appear to encompass all the tasks of a case evaluator in the Superior

Court system: "formulation and simplification of the issues", "the possibility of obtaining admissions of fact and of documents", "the control and scheduling of discovery", and a catch-all, "such other matters as facilitate the just, speedy, and inexpensive disposition of the action." Fed.R.Civ.P. 16(c). Wagshal points to nothing in Foster's role that a Superior Court judge might not have performed under Superior Court Rule 16(c), which substantially tracks the federal model. Although practice appears to vary widely, and some variations raise very serious issues, see, e.g., *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648 (7th Cir.1989) (en banc), it is quite apparent that intensive involvement in settlement is now by no means uncommon among federal district judges. See, e.g., Robert J. Keenan, *Rule 16 and Pretrial Conferences: Have We Forgotten the Most Important Ingredient?*, 63 S.Cal. L.Rev. 1449 (1990); Symposium, *The Role of the Judge in the Settlement Process*, 75 F.R.D. 203 (1976).

Wagshal does not assert that a case evaluator is performing a purely administrative task, such as the personnel decisions—demotion and discharge of a probation officer—at issue in *Forrester v. White*. Because the sort of pre-trial tasks performed by a case evaluator are so integrally related to adjudication proper, we do not think that their somewhat managerial character renders them administrative for these purposes.

Conduct of pre-trial case evaluation and mediation also seems likely to inspire efforts by disappointed litigants to recoup their losses, or at any rate harass the mediator, in a second forum. Cf. *Butz v. Economou*, 438 U.S. at 512, 98 S.Ct. at 2913 ("The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus."). Although a mediator or case evaluator makes no final adjudication, he must often be the bearer of unpleasant news—that a claim or defense may be far weaker than the party supposed. Especially as the losing party will be blocked by judicial immunity from suing the judge, there may be great temptation to sue the messenger whose words foreshadowed the final loss. Cf. *Sindram v. Suda*, 986 F.2d at 1461 (noting that loser may turn on clerks because unable to reach the judge).

The third of the Supreme Court's criteria, the existence of adequate safeguards to control unconstitutional conduct where absolute immunity is granted, is also present. Here, Wagshal was free to seek relief from any misconduct by Foster by applying to Judge Levie. Alternatively, if he thought Foster's communications might prejudice Judge Levie, he could have sought Levie's recusal under Superior Court R.Civ.P. 63–I, Bias or Prejudice of a Judge. The avenues of relief institutionalized in the ADR program and its judicial context provide adequate safeguards.

Wagshal claims that even if mediators may be generally entitled to absolute immunity, Foster may not invoke the immunity because his action was not taken in a judicial capacity, see *Mireles v. Waco*, —— U.S. ——, ——, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (citing *Forrester*, 484 U.S. at 227–29, 108 S.Ct. at 544–45; *Stump*, 435 U.S. at 360, 98 S.Ct. at 1106–07), and because he acted in complete absence of jurisdiction, see *id.* (citing *Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05; *Bradley*, 13 Wall. at 351). Neither exception applies.

Wagshal's argument that the acts for which he has sued Foster are not judicial (apart from the claim against mediators generally) rests simply on his claim that Foster's letter to Judge Levie, stating that he felt he "must recuse" himself and giving his thoughts on possible further mediation efforts and allocation of costs, breached Foster's obligations of neutrality and confidentiality. We assume such a breach for purposes of analysis. But "if judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error ... or was in excess of his authority.'" *Mireles*, —— U.S. at ——, 112 S.Ct. at 288 (quoting *Stump*, 435 U.S. at 356, 98 S.Ct. at 1104–05). Accordingly "we look to the particular act's relation to a general function normally performed by a judge". *Mireles*, —— U.S. —— – ——, 112 S.Ct. at 288–89. Applying the same principle to case evaluators, we have no doubt that Foster's announcing his recusal, reporting in a general way on the past course of media-

tion, and making suggestions for future mediation were the sort of things that case evaluators would properly do.

Wagshal finally argues that Foster cannot be immune for the statements in his letter made after he stated that he "must recuse" himself. This is frivolous. Even if the letter alone effected a recusal (which is doubtful—Judge Levie clearly saw himself as later excusing Foster from service), the simultaneous delivery of an account of his work was the type of act a case evaluator could properly perform on the way out. In fact, we doubt very much if a modest gap in time between effective recusal and recounting of the events would take the latter out of the immunity.

Nor were Foster's actions "taken in the complete absence of all jurisdiction." Wagshal's claim to the contrary rests primarily on the theory that, although Superior Court Rule of Civil Procedure 16(j) requires parties to "attend ... any alternative dispute resolution session ordered by the court", there is no explicit authority to *appoint* case evaluators. This contrasts, says Wagshal, with explicit District law authorizing appointment of masters and hearing commissioners. See, Superior Court R.Civ.P. 53(a) & (b) (masters); D.C.Code § 11–1732(a) (hearing commissioners).

▆ Whatever merit this claim may have under District law, it does not come within a country mile of showing complete absence of jurisdiction. For such a showing, the judicial officer must "know[ ] that he lacks jurisdiction, or act[ ] despite a clearly valid statute or case law expressly depriving him of jurisdiction." *Mills v. Killebrew*, 765 F.2d 69, 71 (6th Cir.1985) (citing *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir.1980)). Similarly, in *White by Swafford v. Gerbitz*, 892 F.2d 457, 462 (6th Cir.1989), the court held that a judge enjoyed judicial immunity when, despite procedural defects in his appointment, he "possessed the office of Special City Judge and was discharging the duties of that position under color of authority." Foster was similarly discharging the duties of case evaluator under color of authority.

▆ At no point does Wagshal develop his constitutional attacks on Foster's jurisdiction, which evidently rest on the theory that the District's use of case evaluators for mandatory but non-binding dispute resolution violates the due process clause of the Fifth Amendment and the right to jury trial guaranteed by the Seventh Amendment. We do not normally pass upon claims that a party fails to articulate intelligibly. *Int'l Brotherhood of Teamsters v. Pena*, 17 F.3d 1478, 1487 (D.C.Cir.1994).

\*　　\*　　\*

▆ We hold that absolute quasi-judicial immunity extends to mediators and case evaluators in the Superior Court's ADR process, and that Foster's actions were taken within the scope of his official duties. The judgment of the district court is

*Affirmed.*