**NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, Plaintiff,**

v.

**OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL 2, et al., Defendants.**

Civil Action No. 95–2317 (JR).

United States District Court, District of Columbia.

Nov. 7, 1996.

Thomas DePaso, Staff Counsel, National Football League Players Association, Washington, DC, Gerald Herz, Morris Kletzkin, Friedlander, Misler, Friedlander, Sloan & Herz, Washington, DC, for Plaintiff.

David R. Levinson, Washington, DC, for defendant Office and Professional Workers Union, Local 2.

David L. Rose, Washington, DC, for defendants Thomas and Raymond.

Allen M. Hutter, Washington, DC, for defendant Harkless.

## MEMORANDUM

ROBERTSON, District Judge.

The decision of the National Football League Players Association ("NFLPA") to lay off and then discharge Rita Raymond and Valerie Thomas in March and April 1988 has given rise to six lawsuits and nearly eight years of litigation. In this, the sixth case, NFLPA sued Ms. Raymond and Ms. Thomas for abuse of process less than three weeks before their employment discrimination claims against NFLPA were set for trial in this Court. NFLPA sued, not only Ms. Raymond and Ms. Thomas, but also their union, Office and Professional Employees International Union, Local 2 ("Local 2"), and a labor arbitrator, James M. Harkless. NFLPA's amended complaint seeks compensatory and punitive damages against Ms. Raymond, Ms. Thomas, and Local 2 for abuse of process; a declaratory judgment nullifying certain decisions of Mr. Harkless; compensatory damages against Local 2 for breach of contract; and compensatory and punitive damages against Mr. Harkless for intentional interference with contract.

All defendants moved to dismiss. The motions were treated as motions for summary judgment and granted by order dated October 15, 1996. The October 15 order also directed plaintiff to show cause why its damages action against Mr. Harkless did not violate either Fed.R.Civ.P. 11(b)(1) or 11(b)(2). This memorandum sets forth the reasons for that order.

## BACKGROUND

NFLPA laid off a number of employees, including Rita Raymond and Valerie Thomas, on March 18, 1988. On April 12, 1988, NFLPA notified Ms. Raymond and Ms. Thomas that they were being discharged for cause. Local 2 filed grievances challenging the dismissals. Pursuant to a collective bargaining agreement between NFLPA and Local 2, the dispute was submitted to Arbitrator James M. Harkless. On January 3, 1989, after a hearing, Mr. Harkless found no just cause for the discharges and ruled that NFLPA had violated the collective bargaining agreement. He decided that Ms. Raymond and Ms. Thomas "must be reinstated to their status as employees, with whatever rights to which they are entitled under the Agreement." Arbitrator's Decision at 36.

Soon after that ruling, Local 2 wrote NFLPA to assert that Ms. Raymond and Ms. Thomas were "entitled to immediate reinstatement with full back pay, from March 1988 to date of reinstatement, and to be made whole for any loss of rights and benefits." NFLPA refused the demand for reinstatement as of March, pointing out that the dismissals were in April 1988 and insisting that the arbitrator had not granted the claims related to the layoffs. Local 2 replied that it would move the layoff grievances to arbitration. NFLPA rejected that effort, taking the position that the discharge and layoff issues had been consolidated before Mr. Harkless and that he must have denied the layoff grievances.

Ms. Raymond and Ms. Thomas each then brought suit (# 1 and # 2) to enforce the arbitration award. Both suits were voluntarily dismissed. Next, Local 2 sued (# 3) to enforce the arbitration award or compel further arbitration of any remaining issues. *OPEIU v. NFLPA*, No. 89–1263, 1993 WL 468416 (D.D.C.). That suit was dismissed for want of prosecution on July 24, 1989. After a complex series of procedural steps, the Court of Appeals finally reversed the dismissal more than four years later, on January 14, 1994. Judge Norma Holloway Johnson then ruled that Mr. Harkless' 1989 decision had been ambiguous and remanded it to Mr. Harkless for clarification. *OPEIU v. NFLPA*, No. 89–1263, 1993 WL 468416 Order of March 21, 1995.[1]

In her remand order in No. 89–1263, Judge Johnson asked Mr. Harkless to answer two questions: (1) what specific remedy he awarded in the initial arbitration, and (2) whether he bifurcated the original arbitration proceedings such that further arbitration was warranted on the issue of layoffs. Order of March 21, 1995 at 9. Mr. Harkless accepted post-remand briefs from the parties. Local 2, in its submission dated May 12, 1995, stated its "belief" that "the NFLPA should have the option of agreeing to have remaining issues heard by this Arbitrator (to which Local 2 hereby consents), or to go through a fresh arbitrator selection process." NFLPA did not respond to Local 2's "belief."

On July 14, 1995, Arbitrator Harkless ruled. He found that Local 2 and NFLPA had agreed in 1988 that he would decide both the layoff grievances and the discharge grievances. He also found that Local 2 and NFLPA had agreed shortly before his November 1988 hearing to bifurcate the proceedings: the parties would proceed first with the discharge claim; if he decided that the discharges were not for just cause, they would address the layoff grievances later. In his July 14, 1995 ruling, Arbitrator Harkless found that he still had jurisdiction and

that Local 2 had not waived its right to proceed with the layoff grievances.

After that ruling the parties agreed to engage in mediation before Mr. Harkless. On August 10, 1995, the parties signed a mediation agreement providing *inter alia* that if mediation efforts were unsuccessful, the "grievances would proceed expeditiously to arbitration." The agreement also stated that Mr. Harkless, in his role as mediator, could meet separately with the parties and their counsel.

The mediation effort failed. NFLPA then asked Arbitrator Harkless to remove himself from the case, implying in its request that, because Mr. Harkless had met with both parties separately during the mediation, he could no longer serve effectively as an arbitrator. NFLPA stated that it now "wanted to accept the offer made by Local 2 in its May 12, 1995 submission that further proceedings in this matter be conducted, at the NFLPA's option, before another arbitrator...."

Local 2 opposed NFLPA's request. Local 2 pointed out that Arbitrator Harkless's removal would frustrate the parties' agreement to proceed promptly to arbitration if mediation should prove unsuccessful. In any event, Local 2 argued, its original suggestion that NFLPA might choose a new arbitrator was foreclosed by the arbitrator's July 14, 1995 ruling that he had retained jurisdiction over all the grievances.

Arbitrator Harkless rejected NFLPA's request that he recuse himself and set the matter for hearing on November 29, 1995. NFLPA made three more requests that Arbitrator Harkless remove himself from the case and then, on November 22, 1995, filed this suit. Counsel for NFLPA wrote directly to Mr. Harkless on November 28, 1995, reiterating NFLPA's position that it did not agree to his serving as an arbitrator and that he had no authority or jurisdiction to proceed. Mr. Harkless proceeded to hold the

---

1. While the dismissal of No. 89–1263 was on appeal, Ms. Thomas again sued (# 4) to enforce the arbitration award. That case was dismissed when Judge Johnson ruled that Ms. Thomas had the opportunity to enforce her rights in No. 89–

1263. Also filed during that period was the Title VII suit (# 5) of Ms. Thomas, Ms. Raymond and Julie Taylor–Bland against NFLPA, No. 91–3332 (D.D.C.). It was case # 5 that was in the final pretrial stages when NFLPA filed this case.

hearing on November 29 and 30 and December 4, 1995. He has rendered no decision.

## ANALYSIS

The motions before the Court are Fed. R.Civ.P. 12(b)(6) motions to dismiss. Materials outside the pleading have been presented to and considered by the Court. The actions are accordingly treated as motions for summary judgment.

In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989). Mere allegations, however, or mere denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment. An opposition to a motion for summary judgment must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). Evidence that is "merely colorable" or "not significantly probative" cannot prevent the issuance of summary judgment. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### 1. *Abuse of process*

In the District of Columbia, an action for abuse of process lies where the legal system "has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Boum v. Hamilton*, 601 A.2d 1074, 1079 (D.C.1992) (citations omitted). In order to prevail, a plaintiff must show, not only that defendant acted with an ulterior motive, *see Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.1980) (issu-

ance of litigation without more is not actionable no matter what the ulterior motive), but also that there was a "perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Id.*

Plaintiff alleges that the suits by Ms. Raymond, Ms. Thomas and Local 2 were filed to (i) attack NFLPA's business reputation, (ii) coerce NFLPA into taking action inimical to its interests, or (iii) inflict economic harm on NFLPA. No District of Columbia cases have equated any of those alleged motives with the requisite "perversion of the judicial process." Of course, filing an action for *any* improper purpose, "such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," Fed. R.Civ.P. 11(b)(1), can subject the filing parties and their lawyers to sanctions, but plaintiff does not assert that a Rule 11 violation (even if present here) is equivalent to abuse of process. Instead, plaintiff relies upon cases from New York and New Mexico for the proposition that defendants may be held to answer for abuse of process because of the lawsuits they filed.

Plaintiff cites *Williams v. Williams*, 27 A.D.2d 550, 275 N.Y.S.2d 425 (1966), for the proposition that using the judicial process to attack one's business reputation is adequate to sustain an abuse of process claim. The allegation in that case was that plaintiff maliciously mailed copies of a misleading complaint to business leaders. Assuming *arguendo* that similar facts would support a claim of abuse of process in this jurisdiction, the *Williams* case is inapposite because no allegation in the present case is remotely similar to the facts of that case. Plaintiff can point only to a single news article in the *Boston Globe*, which contains quotes from counsel for one of the defendants. Plaintiff provides no evidence to suggest that defendants took affirmative actions to disseminate the story of their litigation with NFLPA. Without such evidence, plaintiff's allegation of an intentional attack on NFLPA's business reputation amounts to no more than an allegation of ulterior motive.

Plaintiff next alleges that defendants brought their suits in order to extort an unreasonably large monetary settlement from NFLPA. Here, plaintiff relies on *Richardson v. Rutherford,* 109 N.M. 495, 787 P.2d 414, 420 (1990). *Richardson* is an extraordinary tale of an absentee ranch owner who first intimidated his ranch manager into signing over some 1800 acres of Arizona ranch land to him, then fired the manager, and then served the manager, now penniless, with a civil action for $3 million for conversion and fraud. The manager was not intimidated by the suit, as it turned out. He counterclaimed, and prevailed, on theories of conversion of property and abuse of process. The jury instruction on abuse of process used the same language found in the District of Columbia cases—"perversion of the court processes to accomplish some end which the process was not intended by law to accomplish . . . ." *Id.* 787 P.2d at 419. The New Mexico court's scholarly opinion illuminates the rather obscure language of that test by referring to the Restatement (Second) of Torts § 682 (1976), which provides:

"One who uses a legal process, whether criminal or civil, against another *primarily to accomplish a purpose for which it is not designed,* is subject to liability to the other for harm caused by the abuse of process." (Emphasis added.)

In the *Richardson* case, the illegitimate purpose of the ranch owner's suit was to intimidate the manager so that he would not contest the conversion of his Arizona property. The New Mexico Supreme Court found evidentiary support for the suit's purpose of intimidation in the ranch owner's disproportionately huge *ad damnum,* in the "excessive, unreasonable attachment of . . . exhibits to the complaint," 787 P.2d at 422, and in the lack of investigation by plaintiff before he filed the suit. The *Richardson* case is completely inapposite to the current one. Not only are the roles of the parties reversed here—NFLPA is accusing David of intimidating Goliath—but all of the actions about which NFLPA complains dealt directly with the employment claims of Ms. Thomas, Ms.

Raymond and Local 2 and were brought for the purposes for which such suits are designed and authorized by applicable statutes.

Finally, plaintiff relies upon *Board of Education v. Farmingdale Classroom Teachers Assoc.,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975), to support their assertion that bringing unwarranted actions for the purpose of inflicting serious economic injury amounts to abuse of process. In *Farmingdale,* a teachers' association issued subpoenas to 87 teachers to compel their appearance as witnesses at a hearing. The teachers' association refused the school district's request that most of the teachers be excused and that staggered hearing dates be set for the others. The school district was then forced to the expense of hiring 77 substitute teachers. The court ruled that the teachers' association was motivated by an intent to harass and to injure and that the refusal to stagger the appearances of the teachers was sufficient to support an inference that the process was being perverted to inflict economic harm on the school district.

Nothing like the facts of *Farmingdale* has been alleged or appears of record here. The individual suits (#1, #2 and #4) were quickly resolved, and one plaintiff prevailed in the Title VII action (#5). As for the suit to enforce the arbitration award (#3), NFLPA's own litigation tactics appear to have been at least as responsible for any economic harm suffered by NFLPA as was the filing of the action. It suffices to say, without turning the inquiry around to explore NFLPA's motivation in bringing the instant suit, that NFLPA has not alleged facts that would bring this case within the *Farmingdale* rule, even if *Farmingdale* were controlling District of Columbia precedent.

2. *Breach of contract and tortious interference with contract*

 Plaintiff's breach of contract claim is against OPEIU, Local 2; its tortious interference claim is against Arbitrator Harkless.[2] The facts are not in dispute. The assertion

---

**2.** Because no contract existed between NFLPA and OPEIU, it is unnecessary to consider whether the plaintiff's claims are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

is that Local 2's statement in its May 12, 1995, post-remand brief—"Local 2 believes that the NFLPA should have the option of agreeing to have the remaining issues heard by this Arbitrator (to which Local 2 hereby consents), or to go through a fresh arbitrator selection process"—was an "offer"; that NFLPA's August 18, 1995 letter to Arbitrator Harkless requesting that he recuse himself from the case was an "acceptance"; that Arbitrator Harkless tortiously interfered with the "contract" formed by that "offer" and that "acceptance" when he proceeded with the arbitration; and that OPEIU breached the "contract" by proceeding with the arbitration.

That analysis is completely without merit, for at least two reasons. First, no "power of acceptance" was created in NFLPA by the oblique suggestion of Local 2, which was made in a letter to the arbitrator and not to NFLPA. *See* Restatement (Second) of Contract, § 29 (1981). Second, even if Local 2's May 12 letter was an "offer," it was extinguished *before* NFLPA's August 18 attempt to "accept" by Arbitrator Harkless' July 14 ruling that he had jurisdiction over the remaining layoff grievances.

█ Moreover, if a contract had existed, Arbitrator Harkless would have had the quasi-judicial immunity that applies to arbitrators and mediators. *Wagshal v. Foster*, 28 F.3d 1249, 1252–54 (D.C.Cir.1994).

### 3. *Declaratory judgment*

Plaintiff's declaratory judgment claim seeks to nullify all the actions Arbitrator Harkless has taken. The assertions are (1) that Harkless had no authority as an arbitrator because of the alleged "contract" to recruit a "fresh" arbitrator, and (2) that Harkless has demonstrated a manifest bias toward NFLPA requiring his recusal. The first assertion fails because there was no "contract." The second assertion, that of bias, is grounded in a number of factual allegations.

First, NFLPA alleges that Harkless received confidential information while acting

as a mediator that disqualified him from serving as arbitrator. It is undisputed, however, that the National Academy of Arbitrators' Code of Professional Responsibility allows for mediation by arbitrators. *Id.* at § II.F. It is also undisputed that NFLPA agreed in advance that Mr. Harkless would receive confidential information from both sides during the mediation. NFLPA does not argue (and would be estopped to argue) that it agreed to mediation before Mr. Harkless *in order to* secure his disqualification from further service as an arbitrator.

Second, the NFLPA alleges that Harkless (1) refused to accept certain expert testimony into evidence, (2) rejected NFLPA's request to postpone the arbitration hearing until after the completion of the Title VII trial, and (3) denied NFLPA's request that he recuse himself.[3] These allegations are taken as true for purposes of this motion, but none of them, whether considered separately or all together, justifies judicial intervention into the arbitration proceedings.

█ It is well established that courts defer to arbitrators' decisions unless there had been an abuse of discretion. *Sanders v. WMATA*, 819 F.2d 1151, 1157 (D.C.Cir.1987). "The case must present some egregious deviation from the norm before we will abandon the firmly-established principle of deference." *OPEIU v. WMATA*, 724 F.2d 133, 137 (D.C.Cir.1983). The required deference applies particularly to arbitrators' procedural rulings, and especially to evidentiary rulings. *See American Postal Workers Union v. USPS*, 789 F.2d 1, 3 (D.C.Cir.1986). Arbitrator Harkless' refusal to consider expert testimony on a single issue falls within this rule. Similarly, his decision to deny NFLPA's request for postponement did not constitute arbitral misconduct where, as here, the movant has not demonstrated that the postponement was necessary for a fair hearing. *Local Union 251 v. Narragansett Improvement Co.*, 503 F.2d 309, 312 (1st Cir.1974). NFLPA's argument that it could

---

**3.** NFLPA also challenges a number of actions taken by Arbitrator Harkless during the original arbitration in 1988. None of these challenges was raised before Judge Johnson, and NFLPA has almost certainly waived them. In any event, they do not constitute misconduct that justifies judicial intervention.

not participate in the hearing because it was preparing for the related Title VII suit (# 5) in December is not persuasive because (1) NFLPA had already stated that it would not participate in the arbitration hearing and (2) NFLPA was able to mobilize the resources necessary to bring the instant lawsuit about a week before the scheduled hearing. As for Arbitrator Harkless' decision not to recuse himself from the case, the plaintiff has not alleged behavior by Mr. Harkless that constitutes "some egregious deviation from the norm" that governs arbitrators. *OPEIU v. WMATA,* 724 F.2d at 137.

▇ Particularly unmeritorious is plaintiff's argument that its own act of filing the present suit against Arbitrator Harkless gave him an interest in the outcome of the arbitration, thereby automatically disqualifying him. Acceptance of that argument would allow any disgruntled party to "remove" an arbitrator by bringing suit against him or her. Filing suit for such a purpose might indeed satisfy the District of Columbia test for abuse of process. That thought, together with the complete lack of merit in the tortious interference claim against Mr. Harkless, is what gave rise to the Court's inquiry under Rule 11.

## *ORDER*

**ORDERED** that plaintiff's motion for an enlargement of time [# 23] is **granted.** And it is further

**ORDERED** that the plaintiff may have until November 27, 1996, to respond to this Court's order of October 15, 1996.