Dear Honorable Michael M. Galloway
You have requested our opinion as to whether attorneys who serve as court-appointed settlement officers — until recently known as "settlement masters" — are entitled to qualified immunity in the performance of their judicial tasks. You have also asked whether the change in the title of these appointees affects the answer to this question.
In our opinion, court-appointed settlement officers are entitled, at a minimum, to qualified immunity and may also have the greater protection of absolute immunity in the performance of their court-related functions. An individual who performs tasks integral to the judicial process, including an attorney acting as a court-appointed settlement officer, has the benefit of such official immunity. Thus, so long as a claim is related to the performance of those tasks, the appointee is entitled to this immunity, whether he or she is called a settlement master or a settlement officer.
 I Background
A. The Case Management Process in the Circuit Court
The Maryland Rules provide a framework for the orderly scheduling and management of civil cases in a circuit court. The Administrative Judge in each county is to supervise the assignment of actions for trial to achieve the efficient use of judicial personnel and to expeditiously bring pending actions to trial. See Rule 16-202(a). *Page 69 
The County Administrative Judge is to develop, and upon approval of the Chief Judge of the Court of Appeals, implement and monitor a case management plan for the prompt and efficient scheduling and disposition of cases in circuit court. See Rule 16-202(b).
As part of the case management process, the circuit court is generally to issue a scheduling order in every civil action. Rule 2-504(a). Subject to certain limitations,[1] the scheduling order may provide, among other things, that the parties participate in "an available and appropriate form" of alternative dispute resolution ("ADR"). Rule 2-504(b)(2)(C).
A circuit court may rely upon masters appointed by the court to assist with pending cases. Under Rule 2-541(a)(1), a majority of the judges of the circuit court may appoint full time or part time "standing" masters. In addition, Rule 2-541(a)(2) provides that the court may appoint a "special" master for a particular action and specify or limit the powers of the master. In either case, a master "serves at the pleasure of the appointing court and is an officer of the court in which the referred matter is pending." Rule 2-541(a)(3).[2] *Page 70 
B. ADR in the Circuit Court
Title 17 of the Maryland Rules establishes procedures for the implementation of ADR in most civil actions in the circuit court.[3]
ADR includes "a settlement conference, neutral case evaluation, neutral fact-finding, arbitration, mediation, other non-judicial resolution process, or [a] combination of those processes." Rule 17-102(a). A "settlement conference" is defined as "a conference at which the parties, their attorneys, or both appear before an impartial person to discuss the issues and positions of the parties in the action in an attempt to resolve the dispute or issues in the dispute by agreement or by means other than trial." Rule 17-102(h). The settlement conference may include neutral case evaluation and neutral fact-finding, and the impartial person may recommend the terms of an agreement.[4]Id. When a court enters an order referring *Page 71 
parties to ADR — e.g., a settlement conference — it may designate a qualified person to conduct the proceeding, unless the parties agree on another person. Rule 17-103(c)(4).
A court may not require a party or a party's attorney to participate in an ADR proceeding conducted by a person designated by the court unless the person possesses the minimum qualifications prescribed by the Rules[5] or the parties otherwise agree to participate. See Rule 17-103(b). A court that enters an order referring a case to ADR is to give the parties a reasonable opportunity to object to the referral, to offer an alternative proposal, and to agree on a person to conduct the proceeding. See Rule 17-103(c)(2). The court may not order an objecting party to participate in a fee-for-service ADR proceeding; but the court may require the parties to participate in a non-fee-for-service proceeding before an individual the court designates, unless the parties inform the court of their agreement on another person willing and able to conduct the proceeding. See Rule 17-103(c)(3), (4).
C. Case Management and ADR in the Circuit Court for CarrollCounty
You have explained that, prior to 1996, the Circuit Court for Carroll County ("the Court") engaged a retired judge to conduct settlement conferences. On July 1, 1996, Judge Raymond E. Beck, Sr., then Administrative Judge of the Court, appointed 25 "settlement masters" to conduct settlement conferences, pursuant to the authority under Rule 2-541(a)(2) to appoint special masters. The *Page 72 
settlement masters, who were all experienced local attorneys, were contractual employees of the court. From 1996 through 2007, these settlement masters were reappointed annually, pursuant to Rule 2-541(a)(2), with some resignations and new appointments. You state that the settlement master program was apparently highly effective in resolving most of the cases pending before the Court without trial.
Effective January 1, 1999, the Maryland Rules formally recognized the settlement conference as part of a court's differentiated case management plan ("DCMP"). See Rule 17-102(h). The settlement master program was incorporated in the Court's Civil Non-Domestic DCMP that was approved by Chief Judge Bell pursuant to Rule 16-202(b), effective January 1, 2006. You state that in 2007, Chief Judge Bell approved the Court's Family Law DCMP with a requirement that the title of the Court's settlement masters be changed to "settlement officers" to avoid confusion with the standing masters appointed pursuant to Rule 2-541(a)(1).[6] Accordingly, the Court's final Family Law DCMP and your Administrative Order dated October 1, 2007, refer to these former settlement masters as "settlement officers."
We understand that the settlement officers, who are still appointed pursuant to Rule 2-541(a)(2), are contractual employees of the Court.[7] They typically conduct settlement discussions in their respective areas of expertise, as designated by the Court's assignment office. *Page 73 
 II Immunity of Settlement Officers Appointed under MarylandRules
You state that some settlement officers have expressed a concern that the change of title may have resulted in a loss of immunity from suit. Potential claims against a settlement officer or mediator likely fall into two broad categories: (1) common law torts — such as negligent performance of duties, intentional tortuous interference with contractual relationships, breach of fiduciary duty, and defamation — and constitutional torts under State law and (2) civil rights violations under 42 U.S.C. § 1983. See Grenig, 1 Alternative Dispute Resolution § 4 .45; see also C. Joseph, The Scope of Mediator Immunity:When Mediators Can Invoke Absolute Immunity, 12 Ohio St.J. on Disp. Resol. 629, 630 (1997). Although the potential claims could arise under different bodies of law with their own immunity principles, the application of those principles to settlement officers is similar.
A. Immunity as to Claims under State Law 1. Qualified Immunity under the Maryland Tort Claims Act
The Maryland Tort Claims Act ("MTCA") provides a qualified immunity that protects a State officer or employee from claims based on "a tortuous act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Annotated Code of Maryland, Courts Judicial Proceedings Article ("CJ"), § 5-522(b) and State Government Article ("SG") § 12-105. That immunity also protects State employees with respect to liability for State constitutional torts. See Lee v. Cline, 384 Md. 245, 266,863 A.2d 297 (2004) (while MTCA provides a defense to such claims, jury issue as to malice precluded summary judgment on basis of immunity). As a part-time employee of the Court, a settlement officer would have the benefit of this immunity, regardless of the label applied to the position. See SG § 12-101(a)(11) (defining State personnel under the MTCA to include employees of a circuit court). *Page 74 
 2. Qualified Immunity and Absolute Judicial Immunity under CommonLaw
The principle that judges are absolutely immune from civil liability for the exercise of their judicial duties "has been part of the common law since very early days." Parker v. State, 337 Md. 271, 277,653 A.2d 436 (1995) (holding that a judge who issued an arrest warrant was absolutely immune from suit). This common law principle has "neither been abrogated nor been modified in Maryland"; instead, it has been affirmed in a number of decisions of the Court of Appeals.[8]337 Md. at 283; see also Mandel v. O'Hara, 320 Md. 103, 107, 576 A.2d 766
(1990).
In developing the principle of absolute judicial immunity, the Maryland courts have distinguished the qualified — and narrower — immunity generally accorded to public officials for discretionary acts. The defense of qualified immunity provides "`ample protection to all but the plainly incompetent or those who knowingly violate the law.'"Simms v. Constantine, 113 Md. App. 291, 313, 688 A.2d 1 (1997) (quotingBurns v. Reed, 500 U.S. 478, 494-95 (1991)). Because qualified rather than absolute immunity is "ordinarily . . . sufficient to protect government officials in the exercise of their duties," an official who seeks absolute immunity "bears the burden of showing that such immunity is `justified for the function in question.'" Gill v. Ripley,352 Md. 754, 768, 724 A.2d 88 (1999) (quoting Burns, 500 U.S. at 486).
Absolute judicial immunity, unlike qualified immunity, applies regardless of the nature of the tort and even where a plaintiff alleges that a judge acted in bad faith, maliciously or corruptly. SeeParker, 337 Md. at 284-85. Absolute immunity is a broad immunity from suit, not just from the ultimate assessment of damages. See J. Knoll,Protecting Participants in the Mediation Process: The Role of Privilegeand Immunity, 34 Torts Ins.L.J. 115, 122 (1998). By comparison, qualified immunity shields a public official from liability for non-malicious negligent conduct committed in the *Page 75 
performance of discretionary acts in furtherance of official duties.[9] See Smith v. Danielczyk, 400 Md. 98, 129, 928 A.2d 795
(2007).
3. Application of Common Law Immunity to Other Court Officers
Although the absolute immunity doctrine was first applied to judges, it "eventually was expanded to include others involved with the judicial process." Gill, 352 Md. at 761 (holding that prosecutors and their support staff were absolutely immune for dismissing a paternity action without the mother's consent). In defining the scope of absolute judicial immunity, the Court of Appeals has adopted a "functional approach," holding that absolute immunity should be accorded "so long as their acts are `judicial' . . . in nature and within the very general scope of their jurisdiction." Id. at 770. A limited but absolute privilege has also been recognized for witnesses, parties to litigation and attorneys, with respect to communications with the client, the examination of witnesses, and statements made to the court or jury and in pleadings. Id. at 762. Officials other than judges involved in the judicial process are protected by absolute immunity "because their judgments are functionally comparable to that of judges — that is, because they, too, exercise a discretionary judgment as part of their function." Id. at 762. Thus, the general rule is that individuals employed by a court, acting under the direction of a judge, or implementing a judicial order, "when performing tasks that are integral to the judicial process, enjoy the same immunity that is applicable to the judges." Id. at 771; cf. Fox v. Wills, 390 Md. 620, 890 A.2d 726
(2006) (holding that an attorney appointed as guardian ad litem is not entitled to absolute immunity because the attorney functions primarily as an advocate for the child rather than as an agent of the court).
No reported Maryland case specifically addresses the extent to which court-appointed "settlement officers" enjoy immunity from suit. We note that a settlement officer appointed under Rule 2-541(a) is considered an officer of the court. See Rule 2-541(a)(3). The Court of Special Appeals has recognized that individuals *Page 76 
appointed by a court under the same rule to assist a circuit court in a divorce action enjoy "at least" qualified immunity. Tucker v.Woolery, 99 Md. App. 295, 304-05, 637 A.2d 482 (1994). InTucker, the circuit court appointed two individuals as "special masters and trustees" to make certain determinations as to property in a divorce action. Third parties who claimed an interest in some of the property were permitted to intervene in the divorce action and later sued the trustees for negligence and breach of fiduciary duty, among other claims. The Court of Special Appeals held that the trustees were "entitled, at least to a qualified judicial immunity" because they acted as judicial officers under their appointment and performed discretionary functions.[10] Because the complaint could be dismissed on the basis of qualified immunity, the Court declined to determine whether they were entitled to absolute judicial immunity.[11] *Page 77 
In our view, it is likely that a Maryland court would hold that a settlement officer is entitled, at a minimum, to qualified immunity and probably to absolute quasi-judicial immunity. Under the circuit court's case management plans, a settlement officer is "an impartial person" before whom the parties and their counsel appear "to discuss the issues and positions of the parties in the action in an attempt to resolve the dispute or issues in the dispute by agreement or by means other than trial." Rule 17-102(h). In other words, the settlement officer performs functions "that are integral to the judicial process." See Gill,352 Md. at 771.
To overcome absolute quasi-judicial immunity, a litigant would have to demonstrate that a settlement officer had acted outside the scope of the officer's jurisdiction. See Parker, 337 Md. at 284. Thus, in all but the rare case, a settlement officer should be able to obtain a dismissal of an action on the pleadings in actions raising State common law and constitutional torts claims.
The change in the title of the Court's settlement officers does not affect this conclusion. Under Maryland cases, the analysis focuses on the function of the individual asserting immunity, not on the individual's title. See G ill, 352 Md. at 772 (noting that under the functional approach, immunity "flows not from rank or title . . . but from the nature of the responsibilities of the individual officer"). Thus, so long as the settlement officers continue to exercise the same court-related functions as their predecessors, the change in their title does not deprive them of immunity.
B. Immunity as to Claims under Federal Law
With respect to federal claim s, qualified immunity also protects public officials in § 1983 actions. In § 1983 actions, public officials are immune except for acts that violate the settled constitutional rights of the plaintiff at the time the act occurred. See Harlow v.Fitzgerald, 457 U.S. 800, 818 (1982). Under an objective standard that assesses the reasonableness of the public official's actions, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Id. at 817-18.
Absolute judicial immunity can also apply in a § 1983 action. SeeStump v. Sparkman, 435 U.S. 349 (1978); see generally J. Knoll, 34 Torts Ins. L.J. at 122-27; S. Shapiro, Suits Against State Officials forDamages for Violations of Constitutional Rights: *Page 78 Comparing Maryland and Federal Law, 23 U. Balt. L.Rev. 423, 458 (1994).
In Wagshal v. Foster, 28 F.3d 1249 (D.C. Cir. 1994), the United States Court of Appeals for the District of Columbia held that a court-appointed mediator had absolute immunity. It distilled the Supreme Court's approach to quasi-judicial immunity to a consideration of three main factors:
 (1) whether the functions of the official in question are comparable to those of a judge;
 (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and
 (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct.
Wagshal, 28 F.3d at 1252 (citing Butz v. Economou, 438 U.S. 478, 512
(1978)).
The D.C. Circuit found that a mediator's activities met these criteria. First, the court determined that the mediator's activities are "integrally related to adjudication proper." 28 F.3d at 1253. Second, the court noted that the "[c]onduct of pre-trial case evaluation and mediation also seems likely to inspire efforts by disappointed litigants to recoup their losses, or at any rate harass the mediator, in a second forum." Id. Finally, the court found that the litigant could complain to the judge who appointed the mediator or seek recusal of the mediator and thereby obtain relief from any purported misconduct.[12] Id. *Page 79 
To overcome absolute quasi-judicial immunity, a litigant would have to demonstrate that a settlement officer's action was not taken in a judicial capacity and that the officer acted outside the scope of his jurisdiction. Wagshal, 28 F.3d at 1253. A litigant must meet a heavy burden to prove these exceptions. "[I]f judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Id. (internal citations and quotation marks omitted). Moreover, to show an absence of jurisdiction, a settlement officer "must know that he lacks jurisdiction, or acts despite a clearly valid statute or case law expressly depriving him of such jurisdiction." Id. at 1254 (internal citations and quotation marks omitted).
In our view, a settlement officer would be entitled to quasi-judicial immunity in a § 1983 action. This is because "the general process of encouraging settlement is a natural, almost inevitable, concomitant of adjudication." Wagshal, 28 F.3d at 1252 (concluding that a case evaluator in the District of Columbia Superior Court performed a judicial function in coordinating settlement efforts)
Because the federal courts apply a functional test similar to that employed by the Maryland courts with respect to State law claims, the change in title of the Court's settlement officers would not affect the application of the immunity doctrine to that position. Forrester v.White, 484 U.S. 219 (1988); see also Gill, 352 Md. at 772 (citing federal authorities and endorsing "the functional approach taken by the Supreme Court with respect to judicial immunity — under which immunity flows not from rank or title . . . but from the nature of the responsibilities of the individual officer") (internal citations and quotations omitted). Thus, in determining whether the immunity defense applies, the federal courts examine "the nature of the function performed, not the identity of the actor who performed it."Forrester, 484 U.S. at 229. *Page 80 
 III Conclusion
An individual who performs tasks integral to the judicial process is entitled, at a minimum, to qualified immunity and is likely also entitled to the greater protection of absolute immunity, with respect to claims under both State and federal law. In our opinion, an attorney appointed by the Court pursuant to Rule 2-541(a) as a settlement officer has the benefit of such official immunity. Thus, so long as a claim is related to the performance of those tasks, the appointee is entitled to this immunity whether he or she is called a settlement master or a settlement officer.
Douglas F. GanslerAttorney General
Mark J. DavisAssistant Attorney General
Robert N. McDonald Chief CounselOpinions and Advice
[1] Rule 2-504(b)(2)(C) states that a referral for ADR must conform to the limitations in Rule 2-504.1(e). The latter rule provides that a court may not order a party or counsel for a party to participate in an ADR process under Rule 2-504 except in accordance with Rule 9-205 or Rule 17-103. Rule 9-205 provides that a court is not to order mediation in a child custody and visitation dispute if a party or the child represents to the court in good faith that there is a genuine issue of physical or sexual abuse of the party or the child and that mediation would thus be inappropriate. Rule 17-103 provides, among other things, that a court is to consider a party's objection to a referral for ADR and may not order an objecting party to participate in an ADR proceeding other than a non-fee-for-service settlement conference.
[2] Rule 2-541(a), concerning the appointment of masters, reads:
 Masters.
 (a) Appointment — Compensation.
 (1) Standing master. A majority of the judges of the circuit court of a county may appoint a full time or part time standing master and shall prescribe the compensation, fees, and costs of the master. No person may serve as a standing master upon reaching the age of 70 years.
 (2) Special master. The court may appoint a special master for a particular action and shall prescribe the compensation, fees, and costs of the special master and assess them among the parties. The order of appointment may specify or limit the powers of a special master and may contain special directions.
 (3) Officer of the court. A master serves at the pleasure of the appointing court and is an officer of the court in which the referred matter is pending.
[3] These rules do not apply to actions or orders to enforce a contractual agreement to submit a dispute to ADR and, except for Rule 17-104 pertaining to the qualifications and selection of a mediator, to health care malpractice claims. See Rule 17-101(a).
[4] In neutral case evaluation and neutral fact-finding, the parties, their attorneys, or both appear before an impartial person and present in summary fashion the evidence and arguments supporting their respective positions. See Rules 17-102(f), (g). In neutral case evaluation, the impartial person renders an evaluation of the parties' positions and an opinion as to the likely outcome of the dispute if the action is tried. See Rule 17-102(f). In neutral fact-finding, the impartial person makes non-binding findings of facts as to those issues, unless the parties agree in writing that the findings are to be binding.See Rule 17-102(g).
[5] The qualifications for mediators, neutral experts, and persons other than mediators and neutral experts are set forth in Rules 17-104, 17-105, and 17-105.1. Those qualifications include educational, training and background standards; the individuals must also promise to abide by standards adopted by the Court of Appeals, to submit to periodic monitoring, and to comply with the court's case management procedures.See Rule 17-104(a). The rules governing the qualifications and selection of a person to conduct ADR proceedings apply only to a person designated by the court in the absence of an agreement by the parties and do not apply to a master, examiner, or auditor appointed under Rules 2-541, 2-542, or 2-543. See Rule 17-101(b).
[6] We understand that the courts may adopt new nomenclature for masters generally. The Judicial Cabinet, the judiciary's policy-making body, recently announced a naming contest for a new title for the master position. See Justice Matters (February 2008) at p. 15.
[7] You have advised that settlement officers in the County who hear domestic matters are paid from State funds and those who hear non-domestic matters are paid from County funds. Given that Rule 2-541(a)(2) appears to contemplate that the compensation of "special" masters appointed under that rule is assessed against the parties, the settlement officers may be more appropriately characterized as part-time standing masters authorized under Rule 2-541(a)(1). In any event, our answer to your questions would be the same regardless of which provision of Rule 2-541(a) authorizes these appointments. See Part II.A.3. of this opinion.
[8] Article 5 of the Maryland Declaration of Rights provides that "the inhabitants of Maryland are entitled to the Common Law of England" except as changed by the Legislature or the Court of Appeals.Parker, 337 Md. at 283 n. 7.
[9] Stated differently, "[a]n absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused." Smith, 400 Md. at 117 (quoting Di Blasiov. Kolodner, 233 Md. 512, 522, 197 A.2d 245 (1964)).
[10] In other contexts, the Court of Appeals has characterized the functions of a master as ministerial, as opposed to discretionary.See Harryman v. State, 359 Md. 492, 505, 754 A.2d 1018 (2000) (reaffirming that a master is not vested with judicial powers under the Maryland Constitution and is a "ministerial officer" who advises and assists a judge); State v. Wiegmann, 350 Md. 585, 593-94, 714 A.2d 841
(1998) (holding that a master is not a judicial officer and performs ministerial, not discretionary, functions). However, in our view, this would not deprive a master of judicial immunity. In Gill, the Court of Appeals explained that judicial immunity has been applied to court clerks "with respect to discretionary acts that implement judicial decisions or that are performed at the direction or under the supervision of a judge." 352 Md. at 771 (emphasis added). Thus, court appointees who perform functions at the direction or under the supervision of a judge are entitled to judicial immunity whether or not their acts are discretionary.
[11] The courts in other states that have considered the issue to date have insulated mediators from liability on the basis of absolute immunity. C. Joseph, 12 Ohio St.J. on Disp. Resol. at 632. Our research did not find that any decisions during the last 10 years in which a court has declined to accord a mediator absolute immunity. In addition, at least 19 states provide some statutory immunity for mediators, although no statute provides blanket immunity for all mediators in all actions. Grenig, 1 Alternative Dispute Resolution § 4.45 (3d ed. 2007 update). Except in Florida, this statutory immunity provides less protection than the doctrine of judicial immunity recognized by the courts. C. Joseph, 12 Ohio St. J. on Disp. Resol. at 661-62.
[12] The third element would be lacking if the mediator were appointed by the parties rather the court. See C. Joseph, 12 Ohio St.J. on Disp. Resol. at 663 ("Application of quasi-judicial immunity is far more troubling when private mediation is used outside of a court setting. The constitutional safeguards required under the third test of Butz may not be met due to the lack of judicial review of the settlement reached through mediation"). Under Rule 17-103(c)(4), if the parties agree within certain time limits on an individual willing and able to conduct an ADR proceeding, the court is to designate that person. However, because the individual is ultimately designated by the court rather than the parties, we need not decide whether quasi-judicial immunity applies when private mediation is used outside of a court setting.